No. 88-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
MARTHA HELEN HOCKADAY,

        Petitioner and Respondent,

   and

HUGH W. HOCKADAY,

        Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        M. Dean Jellison, Kalispell, Montana

    For Respondent:

        Bruce McEvoy; Warden, Christiansen, Johnson & Berg,
Kalispell, Montana

Submitted on Briefs: April 6, 1989

Decided: June 1, 1989

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Hugh Hockaday, the husband, appeals the division of property mandated in the final dissolution of marriage decree entered by the Eleventh Judicial District Court, Flathead County. Martha Hockaday, the wife, filed a cross-appeal requesting the correction of numerous factual and mathematical errors in the District Court's findings of fact and conclusions of law. We affirm the District Court's valuation of those marital properties disputed by appellant and the method employed by the court to equitably distribute the property. We remand the case, however, for a correction of various errors, more specifically enumerated herein, and for an alteration of the final judgment as deemed necessary by the District Court to assure the equitable division of the marital estate after correction of these enumerated errors.

The husband raised the following issues on appeal:

1. Did the District Court fail to make a reasonable valuation of the family home, Lots 32, 33 and Lot 37, and of Hockaday Reproductions, Inc.?

2. Did the District Court err in failing to determine the net worth of the marital estate prior to ordering a division of the estate property?

3. Did the District Court err in awarding Lot 37 to the wife after erroneously finding that the husband owned the property even though his mother held title to the Lot?

The wife raised the following issues on cross-appeal:

1. Did the District Court err by valuing the husband's premarital debt to Montana Forest Products at two different amounts in two different findings of fact?

2. Did the District Court err in valuing the husband's debt to Valley Bank of Kalispell at $15,000 when the evidence indicated the debt was approximately $4,000?

2

3. Did the District Court err in finding that the husband had incurred a premarital alimony debt to a former spouse but then failing to include this debt in its evaluation of assets and debts existing at the time of the parties' marriage?

4. Did the District Court err by failing to include the total $13,834.30 value of improvements to Lots 32 and 33 in Finding No. 24, a finding detailing the value of the marital estate at the time of the hearing?

5. Did the District Court err, after reimbursing the wife for all other inheritance expended for marital purposes, in failing to reimburse her for those life insurance policy benefits amounting to $1,916 which she inherited but similarly expended during the marriage?

Hugh and Martha Hockaday were married on March 17, 1979. On December 12, 1984, the wife filed a petition for dissolution of their marriage and for equitable division of the marital estate. The parties made several attempts at reconciliation after 1984, but these attempts failed. Thereafter, a hearing on the petition was held on December 14 and 15, 1987. On July 8, 1988, the District Court issued its findings of fact, conclusions of law and final decree dissolving the marriage and dividing the marital property.

The court's division of the marital property was made after its consideration of the length of the marriage, the occupation of each, their respective employment histories and the future employment and income opportunities for each in light of their age, health and skills. The court noted that the husband worked in construction, building first log homes and then docks and retaining walls when the market for home construction slowed. His good health would allow for his continued work within the field of construction. Further, as

3

an only child, he stood to inherit property and money when his elderly mother died.

The court noted that the wife, on the other hand, did not have this potential future expectancy of inheritance income as both her parents had already died. Moreover, the court recognized that the wife had a limited potential for future job advancement and salary increases in her present occupation as a legal secretary. She had been employed as a special education administrator in Hardin, Montana and had been working toward her doctorate in the field prior to her marriage. She had a promising chance for job advancement within that field. After she married and moved to the Flathead Valley area, however, she was unable to find employment within this field of expertise. She then worked as a homemaker, helping raise her husband's two children from a prior marriage, and at various odd jobs. She had often helped her husband in his construction business. The court noted that the wife would be unable to return to her prior profession within the field of education, after her nine-year absence from the field, without further schooling and a recertification.

The court also based its division of the marital estate upon a consideration of the amount of property each party brought to the marriage and of the value of the marital estate at the time of dissolution. Based on the evidence elicited at the dissolution hearing, the court determined the assets and debts of each party at the time of their marriage and the value of the marital estate at the time of the hearing, excluding the amount of inherited or gifted property received by each party during the marriage. These evaluations detailed in Findings Nos. 23, 24, and 25 are summarized as follows:

4

|  | Premarital Assets/(Debts) | Marital Estate Value | Inheritance During Marriage |
|---|---|---|---|
| **HUSBAND** | | | |
| Lot 39/residence | $85,000 | $153,617 | |
| Koonce Contract Income | 28,500 | 18,000 | |
| Lots 32/33 | N/A | | $18,760 |
| Lot 37 | N/A | | 16,540 |
| 1975 Chevy truck | 500 | --- | |
| Tractors | 4,000 | 4,000 | |
| Sawmill/Tools | 7,500 | 7,500 | |
| Artwork-Bronzes | 4,000 | 4,000 | |
| Quarter horses | 2,200 | 2,200 | |
| Household/Furnishings | 7,000 | 7,000 | |
| Mortgage on home | (28,500) | (18,000) | |
| Valley Bank | (5,000) | (15,000) | |
| Montana Forest Prod. | (900) | --- | |
| Alimony | ( ) | --- | |
| TOTALS: | $104,300 | $163,317 | $35,300 |
| **WIFE** | | | |
| Arlee Acreage | $4,400 | --- | |
| North Fork Acreage | 5,400 | --- | |
| 1974 Ford Truck | 4,500 | --- | |
| Library | 500 | 500 | |
| Stock | 2,044 | --- | |
| Money Life Ins. Cash Value | 500 | --- | |
| Teacher's Retirement | 3,388 | --- | |
| Household/Furnishings | 4,220 | 4,220 | |
| Life Ins. Benefits/ from Father | N/A | | $ 1,916 |
| Loans/from Mother | N/A | | 15,219 |
| Kalispell Lot | N/A | | 10,000 |
| Lot ?AA Note | N/A | | 57,000 |
| Mobile Home | N/A | | 12,800 |
| Jeep | N/A | | 1,000 |
| First Natl'/ Whitefish, MT | (1,100) | --- | |
| Little Horn State Bank | (2,631) | --- | |
| TOTALS: | $21,221 | $4,720 | $97,935 |

MUTUAL ACQUISITIONS

| | |
|---|---|
| Lots 32/33-Improvements | $3,955 |
| Lot 37-Improvements | 10,000 |
| Two Trucks | 2,100 |
| 1978 Cadillac | 2,500 |
| Hockaday Reproductions | 20,000 |
| Stock/So. Cal. Electric | 100 |
| Jewelry | 850 |
| Note Receivable/His Son | 1,000 |
| Danny on Prints | 200 |
| TOTALS: | $40,705 |

| | |
|---|---|
| Total Marital Estate:<br>(excluding inheritance) | $208,742 |
| Total Premarital Estate:<br>(Husband = 104,300)<br>(Wife = 21,221) | -125,521 |
| Increased value of<br>Marital Estate: | = 83,221 |
| Reimbursement to Wife<br>for Expended inheritance: | - 29,053.30 |
| Remaining Increase in Marital Estate:<br>(Divided Equally) | $54,167.70 |

As is apparent from the foregoing chart, a substantial amount of the wife's inherited monies and premarital assets had been sold and/or spent during the course of the marriage. The court thus awarded $29,053.30 of the increased value of the marital estate to the wife to reimburse her for the $15,219 loaned by her mother to meet marital expenses, and later subtracted from the wife's inheritance amount, and for the additional $13,834.30 in improvements to Lots 32/33 which the court generally traced to the wife's inheritance and liquidated premarital assets. This reimbursement effectively insured that the wife received a return of all her inheritance, except the $1,916 in life insurance benefits from her father's estate. The court then divided the value

6

of the remaining increase in the marital estate equally between the two.

Each party was awarded the total value of their respective premarital assets and the increased value of the marital estate as apportioned by the court. Because of the husband's greater future income potential, the court determined that equity demanded also awarding the wife the value of the majority of her inheritance. Because many of the wife's premarital assets had been sold during the marriage, the court determined that Lots 32, 33 and 37, which constituted the sum of the husband's advance inheritance, would have to be given to the wife to comprise her total. The award of Lots 32 and 33 also served to guarantee the wife's continued right to reside on these lots in her mobile home, a residence she established after her husband obtained a court order expelling her from the family home. The husband retained Lot 39 and the family home.

The husband appealed from the court's valuation and division of the marital estate.

I. CHALLENGES TO THE COURT'S VALUATIONS

Appellant challenges the District Court's valuation of several pieces of property. We will review these alleged valuation errors and reverse the District Court's valuation and subsequent property division only upon a showing that the court acted arbitrarily or clearly abused its discretion so as to create a substantial injustice. In re Marriage of Hall (Mont. 1987), 740 P.2d 684, 686, 44 St.Rep. 1321, 1323. This standard of proof for reversal is necessarily high because a district court has broad discretion when valuing and distributing property in a dissolution action. In re Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852. The court's valuation need only be reasonable in light of competent evidence submitted. In re

Marriage of Milesnick (Mont. 1988), 765 P.2d 751, 755, 45 St.Rep. 2182, 2187.

Appellant's first challenge is to the valuation of Lot 39 at $153,617 at the time of dissolution. He contends this valuation is unreasonable and amounts to an abuse of discretion by the District Court. This value reflects an increase of $68,617 from the $85,000 value assigned by the court to the Lot at the time of marriage. The husband asserts that this increase is erroneous as Lot 39 was worth $125,000 at the time of the marriage and it did not appreciate in value during the marriage.

The District Court based its valuation of Lot 39 on the wife's testimony, which the court concluded generally was more credible than the husband's. Her testimony regarding the value of the Lot was supported by the Flathead County Treasurer's valuation of the property. The husband, on the other hand, offered no concrete evidence in support of his valuation.

The extensive improvements made during the marriage to the family home, located on Lot 39, provide a further illustration of the increased value of the property. These improvements included a remodeled kitchen and bathroom, new carpeting and linoleum upstairs, construction of an outside deck and driveway, and the installation of a large garden and landscaped yard. The parties also converted the unfinished basement of the home into a bathroom, den, bedroom, study area, family room with rock fireplace, and a fruit room, thereby doubling the living area of the home. Evidence of these extensive improvements and the valuation by the county and by the wife indicate that the District Court's valuation was reasonable. We therefore conclude that the court's valuation of Lot 39 was not arbitrary nor the product of an abuse of discretion.

Appellant's second challenge is to the court's valuation of Lots 32 and 33 at $18,760, a value which included $17,789.30 in improvements made during the marriage. Appellant asserts this valuation unreasonably placed the value of Lots 32 and 33 at the time of marriage at $971.

The District Court's findings of fact, when viewed as a whole, indicate that the court valued Lots 32 and 33 at the time of dissolution not at a total $18,760, but rather at $18,760 plus the value of improvements, or $36,549.30. Finding No. 25 placed the base value of the Lot at the time it was gifted to the husband at $18,760. Finding No. 24 recognized $3,955 in improvements attributable to the joint efforts of both parties. Finding No. 27 recognized an additional $13,834.30 in improvements to the Lots arising from the investment of monies directly traceable to the wife's inheritance or liquidated premarital assets. The sum of these findings, $36,549.30, is consistent with the testimony of both the husband and the wife, the county's valuation of the property, and the bills submitted for improvements made to the Lots. We therefore hold that the court did not act arbitrarily or abuse its discretion when it valued Lots 32 and 33.

The District Court admittedly utilized an oftentimes confusing methodology for valuing the various properties and for attributing the value to the entitled party. Moreover, the District Court failed to apply this methodology in a consistent manner; the court failed to include that portion of the $13,834.30 attributable to the wife's inheritance monies in its Finding No. 25, which detailed the wife's inherited property, or on the other hand, to include that portion attributable to her premarital assets in Finding No. 24, which detailed the value of those items benefiting the

marital estate, excluding inheritance monies. We direct the court to correct this omission upon remand.

Appellant's third challenge is to the District Court's valuation of Lot 37 at $16,540, a value which appellant contends included $10,000 worth of improvements made during the marriage. Again, we hold that the value of the Lot stated in Finding No. 25, listing inheritance values, did not include the value of improvements made during the marriage. The court valued the lot at the time of dissolution at the sum of the $16,540 value at the time it was gifted and the $10,000 in improvements made during the marriage.

Appellant failed to show that either of these two values were arbitrary. The wife's testimony and the Flathead County Treasurer's valuation of the property support the court's $16,540 valuation of the unimproved lot. The court cited to the wife's testimony and to the turn-around in profits from the orchard as support for its valuation of the improvements made to Lot 37 at $10,000. The orchard went from a non-profitable orchard with a loss of approximately $4,500 in 1980, at the beginning of their marriage, to a productive orchard capable of producing a net profit of $3,000-$4,000. This improvement can be attributed to the increased care of the orchard and to the addition of a combination of 125 new cherry, peach and apricot trees on Lots 37 and 38, as well as favorable weather conditions. In light of this evidence, we hold that the court's valuation of the property and improvements on it did not amount to a clear abuse of discretion.

Appellant lastly challenges the court's valuation of Hockaday Reproductions, Inc., a business venture commenced to market and sell a limited number of art prints of paintings done by the husband's father, a well-known local artist. The court valued the parties' 50% share of the corporation at

10

$20,000. Yet, appellant contends that those remaining unsold prints would not sell without a great expenditure of time and money, and thus they were worth only the value of the paper on which they were printed.

We hold that the court's valuation of the parties' share of Hockaday Reproductions was not arbitrary. Both parties testified that 250 sets of prints were created by an initial $3,000 investment. Enough prints were sold, roughly twenty sets of prints at the retail price of $175 for a set of five prints (or at $40 for each individual print), to recover the initial investment by all parties to the venture. The potential income available from the remaining approximately 230 sets at this retail price could total $40,240. Although the husband asserted that a substantial amount of time and money would be necessary to market and sell the remaining prints, he failed to provide any evidence or estimates of this monetary amount. In light of all the evidence the court's estimated valuation of the parties' 50% share in Hockaday Reproductions at $20,000 appears reasonable, and we hold that the court did not abuse its discretion in so valuing the corporation's worth.

II. NET WORTH OF THE MARITAL ESTATE

Appellant contends that the District Court erroneously failed to determine the net worth of the marital estate. This determination is required prior to a division of the property, and appellant contends the court abused its discretion when it failed to make such a determination.

Indeed, this Court has previously held that a district court must determine the net worth of a marital estate prior to division of the estate. Schultz v. Schultz (1980), 188 Mont. 363, 365, 613 P.2d 1022, 1024. This determination of net worth is necessary before a court may equitably apportion all the property and assets belonging to the parties as is

11

required by § 40-4-202, MCA. The court need not, however, precisely detail the parties' net worth in one finding. Rather, the findings as a whole must be sufficient to allow for the determination of the parties' net worth. In re Marriage of LeProwse (1982), 198 Mont. 357, 362, 646 P.2d 526, 529.

We hold that the findings as a whole generally were sufficiently detailed and exhaustive. The findings, however, contain several errors which prevent an accurate determination of the parties' net worth. We order these errors corrected upon remand. Specifically, the District Court erroneously awarded the entire value of Lot 37 to the wife despite the fact the husband's mother holds title to the property. The husband had only a limited equity, by virtue of a few payments credited to him under a contract for deed, in the property at the time of dissolution. The District Court only may award that equity acquired by the husband in the property. We therefore direct the court to make further findings as to the exact amount of equity acquired by the husband in the Lot at the time of the dissolution and to make all necessary corrections to the relevant findings, notably to Findings Nos. 15(b), 25 and 36, and to the distribution of the marital estate as deemed necessary in light of these corrections.

We also direct the court to address the following errors raised by cross-appellant. We note the cross-appellant filed a notice to amend the findings to allow the District Court to correct these errors, but the court was unable to address these errors before the notice of appeal was filed. First, the findings erroneously listed the husband's debt to Montana Forest Products at two differing values: Finding No. 7(j) listed the debt at $700, while Finding No. 23 listed the same debt at $900. Second,

Findings Nos. 24 and 30 list the debt owed to Valley Bank at $15,000 (while Finding No. 23 mentions a $5,000 debt), even though both parties concede, and the testimony at the dissolution hearings indicates, that the debt owed was only $4,000. Third, the court considered and listed the premarital debts of both parties in Finding No. 23, yet it failed to list the amount of the recognized alimony debt owed by the husband. Fourth, as previously mentioned in Section I above, the court failed to include the $13,834.30 in improvements made to Lots 32 and 33 either in Finding No. 24 or 25. The fifth allegation of error by cross-appellant, that the court erred in failing to reimburse the wife for the expended $1,916 in inheritance monies, is without merit. The court need not assure the return of all the wife's inheritance, it need only equitably divide the property. The final property division, after correction of the above-mentioned errors, would appear to be equitable.

We affirm the District Court's valuations, but remand this case for correction of the above-mentioned errors and for redistribution of the marital estate as deemed necessary by the District Court, in light of these corrections, to assure an equitable property division.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

13