No.  92-247

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
BIRGIT I. GRAY,

        Petitioner and Respondent,

    -vs-

GARY E. GRAY,

        Respondent and Appellant.


APPEAL FROM:    District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Mark P. Sullivan, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Daniel R. Sweeney, Attorney at Law, Butte, Montana

        For Respondent:

        Kevin E. Vainio, Attorney at Law, Butte, Montana

Submitted on Briefs:  October 22, 1992

                Decided: December 22, 1992

FILED

DEC 22 1992

Filed:  Cd Smith
    CLERK OF SUPREME COURT
       STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Birgit Gray petitioned for dissolution of marriage on January 9, 1991, after nine years of marriage. A decree was entered on May 14, 1992, in the Second Judicial District, Silver Bow County. The husband, Gary, appeals the property division ordered by District Court Judge Mark P. Sullivan.

The parties were married on August 23, 1981, having lived together for the preceding year in Gary's mobile home at 210 Lyndale Lane in Butte. No children were born of this marriage. Gary's youngest child lived with the couple at 210 Lyndale Lane until 1985, and Birgit's only child, John, lived with them throughout their marriage.

Birgit's name was added to the deed on the mobile home after she and Gary were married. She also owned a small house at 2500 Nettie Street in Butte, appraised in 1991 at $5,000. Birgit purchased this house in her own name in 1985 and used it as a rental property.

At the time Birgit filed the petition, she was 37 years old and had been working as a customer service clerk at Montana Power Company for about eighteen months. Her net salary was $880 per month, in addition to which she received $125 per month as child support and approximately $75 per month from rental property. Gary was 48 and had worked nearly twelve years as a telecommunications foreman at Montana Power Company. His net salary was $2,166 per month.

Gary and Birgit were unable to agree on the value of the real

2

property or on a division of their furniture and household goods. After a hearing in November 1991, the District Court entered an Order Distributing Marital Property on January 24, 1992. This order included household furnishings and other personal property. Three items in particular had been disputed at the November 1991 hearing and are still disputed on appeal: a "six-piece bedroom set" and a Honda motorcycle, both awarded to Birgit, and a "mattress box spring set" awarded to Gary.

In his Findings of Fact, Conclusions of Law, and Order, dated April 8, 1992, Judge Sullivan assigned the following items to the marital estate:

| | |
|---|---:|
| 210 Lyndale Lane (increase in value) | $ 30,000 |
| 2500 Nettie St. | 5,000 |
| Husband's retirement benefit | 18,616 |
| Wife's retirement benefit (not vested) | 0 |
| Husband's deferred savings | 40,787 |
| 1983 Dodge van | 3,500 |
| 1985 Honda | 2,900 |
| 1992 Honda Accord | 18,160 |
| Paintings and art supplies | 750 |
| Home furnishings | 4,725 |
| Total Marital Estate | $124,438 |

Liabilities against the marital estate included the entire value of the 1992 Honda, a $3,500 balance owed on the Dodge van, and $1,550 in debts related to the house at 210 Lyndale Lane.

Judge Sullivan divided the parties' assets and liabilities as follows:

| Assets | Gary | Birgit |
|---|---|---|
| Increase in value of 210 Lyndale Lane | $ 15,000 | $ 15,000 |
| 2500 Nettie | 0 | 5,000 |
| Husband's retirement | 9,308 | 9,308 |
| Husband's savings | 20,394 | 20,394 |

3

| | | |
|---|---|---|
| 1983 Dodge van | 0 | 3,500 |
| 1985 Honda | 2,900 | 0 |
| 1992 Honda | 18,160 | 0 |
| Paintings and art supplies | 0 | 750 |
| Home furnishing | 2,362 | 2,362 |
| TOTAL | $ 68,124 | $ 56,314 |

Liabilities

| | | |
|---|---|---|
| Mortgage | 300 | 0 |
| Masonry debt | 500 | 0 |
| Home remodeling | 750 | 0 |
| 1992 Honda | 18,160 | 0 |
| Dodge van | 0 | 3,500 |
| NET TOTAL | $ 48,414 | $ 52,814 |

Gary was ordered to pay Birgit her share of the increased value of the house within ninety days, less the $2,200 due from Birgit to equalize the division of the marital estate. Gary was also ordered to pay Birgit $500 "for the purchase of a mattress and box springs," and $750 for attorney's fees.

Gary presents the following issues for review:

1. Whether the District Court arbitrarily assigned a value, unsupported by any evidence, to the family home for the purpose of establishing a net increase in its value.

2. Whether the District Court arbitrarily assigned a value, unsupported by any evidence, to the box springs and mattress that it had ordered Gary to give Birgit in March 1992.

3. Whether the District Court should have included a Honda motorcycle in its January 1992 Order Distributing Marital Property.

4. Whether the District Court properly awarded Birgit attorney's fees.

I

The primary issue at the November 1991 hearing and in this appeal is the appreciation in value of the house at 210 Lyndale

4

Lane. The District Court determined that the house had appreciated in value during the marriage by $30,000. Both parties challenge this figure on the grounds that the court arbitrarily assigned a 1981 value to the property. Gary argues that the 1981 value should be higher, thus reducing the increase in value assigned to the marital estate, while Birgit argues that the 1981 value should be lower.

Neither party disputes the District Court's conclusion that the fair market value of the house in 1991 was $52,009. Birgit's appraiser valued the house at $64,500, based on sales of comparable single-family homes, while Gary's appraiser valued it at $47,600, based on sales of comparable mobile homes. We hold that the court acted within its discretion in selecting a figure within the range of figures submitted in evidence. In re Marriage of Gerhart (1990), 245 Mont. 279, 800 P.2d 698. The issue is whether the court abused its discretion in assigning a 1981 value to the house.

Gary and his first wife (Karen Gray) bought the house as a mobile home in 1974. They had already purchased and paid for the lot. Between 1974 and 1976 they borrowed money to put in a basement and to install a double garage. Gary testified at the November 1991 hearing that when he married Birgit in 1981 he had invested the following amounts:

```
Lot purchased in 1971 . . . . . . . . . . . $ 1,975
Home improvement loans, 1974-1976 . . . . .   6,980
Payments for mobile home, 1974-81 . . . . .  16,020[1]
```

---

[1] Ninety payments at $178. Gary presented bank statements at the hearing showing that 90 payments had been made before August 23, 1981, when he married Birgit.

5

TOTAL . . . . . . . . . . . . . . . . $24,975[2]

When Gary and Karen Gray were divorced in 1978, they agreed that the house at 210 Lyndale Lane was to be Gary's sole and separate property, subject to the balance payable on the purchase price, and that their equity in the house was $9,256. This figure is equal to the sum of the fifty-two payments that had been made before Gary and Karen Gray signed their property agreement in 1978. Gary agreed to pay Karen half that amount, or $4,628, when he sold the house. At the November 1991 hearing, Birgit presented the 1978 property agreement as evidence of Gary's equity in the house at the time of their marriage.

Gary disputed the implication that $9,256 represented the value of the house in 1978 and stated that Karen Gray had proposed "a figure that she felt would be fair and equitable." In his view, as expressed at the hearing, the value of the house in 1981 was the amount he had actually invested. No evidence on the fair market value of the house in 1981 was presented at the hearing.

Birgit testified that the house was in very poor shape when she moved in, in 1980: the roof leaked, the basement was unfinished, the kitchen cabinets were falling apart, the only bathroom needed repairs, and the lot had not been landscaped. After she and Gary were married, they replaced the roof and built

---

[2] Gary provides a different figure in his brief, asserting that he spent $32,378, including 87 payments on the mobile home, before he married Birgit. He did not itemize this figure. It may include interest on the home improvement loans, which the court specifically disallowed when Gary presented evidence of the loans at the hearing.

a deck; covered the entire house with brick; finished the basement and installed a new bathroom; replaced all the kitchen cabinets; replaced all the interior doors and panelling; rewired the entire house; and landscaped the yard. Birgit said that she had done at least half the work on these improvements and had used part of her salary to pay for building materials.

In estimating the 1981 value for the purpose of determining the increase in value during the parties' marriage, Judge Sullivan relied on the "equity" in the 1978 property settlement. In his Findings of Fact, Conclusions of Law, and Order he calculated the 1981 value as follows:

| | |
|---|---:|
| Equity in 1978 . . . . . . . | $ 9,256 |
| First wife's lien . . . . . . | 4,678 |
| Balance due on August 24, 1981 . | 8,075 |
| TOTAL . . . . . . . . . . . | $22,009 |

The $8,075 balance due was provided by Gary's lawyer, Daniel R. Sweeney, on February 24, 1992, in a letter responding to the judge's post-hearing request. Judge Sullivan also asked Mr. Sweeney to obtain an opinion as to the value of the property from appraiser James Burgess. Mr. Sweeney sent a copy of Burgess' letter, dated February 14, 1992, to Judge Sullivan on February 24. Another copy was submitted to this Court as an appendix to Gary's brief. It expresses the view that the value of a double wide mobile home situated on a one acre lot would remain nearly constant from 1978 to the present.

Gary points out in his brief that Burgess' opinion referred to the entire 1978-92 period, not merely to the 1978-81 period,

implying that during this fourteen-year period the house depreciated to an extent that balanced the value of the post-1981 improvements. Therefore, he argues, the net increase in the value of the home was zero.

Birgit contends in her brief that the District Court properly assumed, based on Burgess' opinion, that the house did not increase in value between 1978 and 1981, and that the court properly allowed for an increase in value after 1981 because the parties "converted the home to something resembling a conventional home." If the court erred at all, Birgit says, it was to <u>overvalue</u> the house by adding the amount of Karen Gray's lien to Gary's 1978 equity, thereby counting the same value ($4,678) twice. Instead, she argues, the court should have added to Gary's 1978 equity ($9,256) the sum of the thirty-seven payments he made after his first divorce and before their marriage, or $6,586,[3] for a premarital value of $15,842 and a postmarital appreciation of $36,167.

A district court has broad discretionary power to determine the value of property in a dissolution action. In re Marriage of Milesnick (1988), 235 Mont. 88, 94, 765 P.2d 751, 755. The court's valuation need only be reasonable in light of competent evidence submitted. In re Marriage of Hockaday (1989), 237 Mont. 413, 418, 773 P.2d 1217, 1221. We will review alleged valuation errors only on a showing that the court acted arbitrarily or clearly abused its discretion so as to create a substantial injustice. <u>Hockaday</u>, 773

---

[3] Gary actually made thirty-eight payments between his first divorce and his marriage to Birgit, adding $6,764 to his total investment.

8

P.2d at 1221; see also In re Marriage of Danelson (Mont. 1992), 833 P.2d 215, 49 St.Rep. 597 (discretionary judgments by the trial court are presumed to be correct and will not be disturbed absent an abuse of discretion).

We hold that in the present case the District Court did not abuse its discretion in assigning a premarital value of $22,009 to the house at 210 Lyndale Lane, and that its action did not create a substantial injustice. Although Judge Sullivan offered no rationale for adopting the "equity" figure in Gary's 1978 property settlement or for adding to that figure the lien held by Gary's first wife, the total sum he adopted for the 1981 value is unlikely to be substantially different from the true value. In the absence of competent evidence from either party, he arrived at a reasonable estimate.

## II

Did the District Court arbitrarily assign a value of $500 to the box springs and mattress Gary was ordered in March 1992 to give Birgit?

This question arose from the division of personal property Judge Sullivan ordered on January 24, 1992. The Order consisted of a list of items to be distributed to each party. This list closely resembled but was not identical to a list submitted by Gary shortly after the November 1991 hearing. Gary's list designated a "six-piece master bedroom set" as Birgit's personal property and a "mattress box spring set" as Gary's personal property. Judge Sullivan assigned the six-piece bedroom set to Birgit and the

mattress box spring set to Gary.

In February, 1992, Birgit filed a motion to hold Gary in contempt because he had not given her the items assigned to her in the court's January 24 Order. She amended her motion in March to reflect the fact that some items had been turned over to her, but in poor or unusable condition. Gary responded that he had in fact turned over all items except for those Birgit had refused to take. The District Court heard this matter on March 24, 1992.

At the March hearing it became clear that Birgit and Gary did not agree as to the components of the "six-piece bedroom set." Gary presented a receipt showing that furniture comprising a six-piece bedroom set had been purchased by the couple without a mattress or box springs. Birgit testified that she understood the bedroom set to include the queen size mattress and box springs that she and Gary had used with the bedroom furniture at 210 Lyndale Lane. Gary testified that Birgit had taken two twin size box spring-and-mattress sets with her when she and her son moved out of the house, and that he understood that the queen size set in the bedroom was the set awarded to him in the January 24 Order.

Birgit testified that one of the twin box spring sets was broken and unusable and that she was sleeping on the floor in a sleeping bag. Judge Sullivan said to Gary:

> I want you to see that she has at least something to sleep on by tomorrow night at nine o'clock. You give her that queen sized mattress and box springs that was originally with your six-piece bedroom set or another set of mattress and box spring by nine o'clock tomorrow night, delivered to her house.

These instructions apparently were without effect, and the court's

10

final order, entered April 8, 1992, included a $500 payment to Birgit for the purchase of a mattress and box springs.

Gary argues that the true value of the disputed mattress and box spring set was $250. At the hearing in November 1991 he offered a list of various household furnishings that had been appraised by a Butte furniture store. Included on this list was a "Serta queen size bed" valued at $250. No other evidence was presented to establish the value of the mattress and box springs.

Birgit argues that the court properly awarded $500 because that sum "closer approaches the replacement value of a mattress and box springs," and that the court could have fined Gary for contempt after he refused to deliver them.

We hold that the District Court had discretion to determine an appropriate value for an item it had repeatedly ordered Gary to deliver to Birgit, and that it did not abuse that discretion in determining that $500 was an appropriate value. See Milesnick, 765 P.2d at 755, and In re Marriage of Gallinger (1986), 221 Mont. 463, 719 P.2d 777 (upholding a district court's division of property on the grounds that the court had employed conscientious judgment in arriving at a substantially just result).

III

Should the District Court have included the Honda motorcycle in its January 1992 Order?

A Honda motorcycle was awarded to Birgit in the District Court's January 1992 Order. At the hearing in November 1991, Birgit testified that she and Gary had given the motorcycle to her

11

son John, after buying it from Gary's sister, and that its current value was $75. Later, Gary testified that he and Birgit had not bought the motorcycle and that his sister still had title to it. In the following exchange, the court ordered Gary to buy the motorcycle and give it to Birgit's son, John:

THE COURT: We're talking about a bike valued at $75, right?

THE WITNESS [Gary]: Yes.

THE COURT: Is that worth spending this time talking about it?

THE WITNESS: Not to me, Your Honor.

THE COURT: Well, buy the bike. Give it to her. John is using the bike, you don't have kids that are using the bike, right?

THE WITNESS: Right.

THE COURT: Okay. That's going to John, Mr. Sweeney.

Gary argues that the motorcycle belonged to his sister and therefore could not be included in the marital estate. Birgit argues that because the sister had left the motorcycle with Gary for several years, she had no real interest in it, and that Gary could in fact comply with the court's order.

It is the duty of the trial court to resolve conflicts in the evidence presented, and we will not disturb its findings when they are based on substantial though conflicting evidence. In re Marriage of Obergfell (1985), 218 Mont. 83, 708 P.2d 561. We find that substantial credible evidence supports Judge Sullivan's decision to award the motorcycle to Birgit.

12

The final issue is whether the District Court should have awarded Birgit $750 in attorney's fees.

The District Court found that Birgit was without financial resources to pay her attorney's fees and awarded her $750 for that purpose. Gary argues that the court erroneously found that Birgit had no income beyond her $880 net monthly salary, and that in fact Birgit received $150 per month in rental income from her house at 2500 Nettie St.[4]

We find no error on the part of the District Court. In its Findings of Fact, Conclusions of Law, and Order it reported that Birgit's monthly income included child support and rental income, for a total of $1,080, or approximately half the net monthly income reported for Gary. Because the record indicates that the District Court was aware of each party's financial resources and obligations we find no abuse of discretion in the award of attorney's fees. See In re Marriage of Sullivan (1990), 243 Mont. 292, 794 P.2d 687; In re Marriage of Carr (1983), 205 Mont. 269, 667 P.2d 425.

Birgit requests attorney's fees for this appeal. Section 25-20-104, MCA, provides that the successful party shall recover the costs of appeal from the other party, but attorney's fees are not included as costs. Allen v. Allen (1978), 175 Mont. 527, 575 P.2d 74. Therefore we deny this request.

---

[4] Testimony at the November 1991 hearing indicated that officially the rent for 2500 Nettie St. was $150 per month but that the tenants did not always pay it. In his Findings of Fact, Conclusions of Law, and Order, Judge Sullivan assumed that Birgit actually received $75 per month as rent for 2500 Nettie St.

AFFIRMED.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter, and West Publishing Company.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14