No. 87-334

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

-------------------

IN RE THE MARRIAGE OF
BARBARA LEE MITZEL (KRAMER),

             Petitioner and Respondent,
     and

DICK WAYNE KRAMER,

        Respondent and Appellant.

-------------------

APPEAL FROM:  The District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Brad L. Arndorfer, Billings, Montana

     For Respondent:

        Nye & Meyer; Jerrold L. Nye, Billings, Montana

-------------------

                         Submitted on Briefs:  Oct. 22, 1987

                              Decided:   December 22, 1987

Filed:  DEC 22 1987

_____
              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Dick and Barbara Kramer were divorced in 1979. As part of the decree of dissolution, they entered into a property settlement and child custody agreement. Dick Kramer now appeals a District Court decision that the portion of that agreement that reads: "Husband will deliver free of charge one (1) beef a year to Wife" is a division of property, not a provision for maintenance. Barbara Kramer, in turn, appeals the value the District Court assigned for Dick Kramer's failure to provide the beef from 1981 through 1986. The issue raised is "Where's the Beef." We affirm in part and reverse in part.

This current dispute was brought to court after three of the four children of the marriage left the mother's home to live with their father. It also arose after Barbara Kramer had remarried. The provision in the original agreement dealing with child support has been modified to reflect that three of the four sons now live with Dick Kramer. That part of the dissolution decree is not now in dispute. What is in controversy is Dick Kramer's assertion that the one-beef-a-year provision is in the nature of maintenance and so terminated once Barbara Kramer remarried in September of 1982.

The District Court held a hearing on December 11, 1986. It ruled on January 2, 1987 that the disproportionate division of marital property under the property settlement agreement required the one-beef-a-year provision be considered a division of property. Under the original property settlement, Dick Kramer had retained the ranch property near Pompey's Pillar, Montana, and Barbara Kramer received her various personal effects as well as a down payment from Dick Kramer on a trailer home. Further, Dick

2

Kramer was to pay one-half of the monthly payments on Barbara Kramer's new home until she remarried. The court concluded:

> That the respondent [Dick Kramer] is presently indebted to petitioner in an amount representing the reasonable value of one (1) cut, wrapped, frozen and delivered beef each year for the years of 1981 through 1986, plus interest. If the parties are unable to reach an agreement as to such reasonable value, this court will schedule a hearing and make findings to that effect.

Dick Kramer requests that we reverse the District Court's ruling that the one-beef-a-year provision was a division of property. This we will not do; the District Court was correct in its ruling. Dick Kramer asserts four reasons that the beef provision should be considered maintenance. First, he notes that although he did not contest the dissolution, it was Barbara Kramer's attorney who drafted the agreement and so under § 28-3-206, MCA, any ambiguity in that agreement must be read against Barbara Kramer. Second, he claims it was clearly erroneous for the District Court to consider the property settlement disproportionate since the family ranch he received was burdened with debt. He argues next that this beef provision is not division of property because the transaction will continue until one of the two parties dies and no time certain exists for termination. Lastly, he says the District Court's analysis wreaks havoc on other divorces in the farm and ranch community that contain similar provisions.

The District Court has far-reaching discretion in the division of marital property and its judgment will not be reversed without a showing of clear abuse of discretion. In Re the Marriage of Rolfe (Mont. 1985), 699 P.2d 79, 83, 42 St.Rep. 623, 626. A court abuses its discretion only when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason causing substantial

injustice. Marriage of Rolfe, 699 P.2d at 83; In Re the Marriage of Jensen (Mont. 1986), 727 P.2d 512, 515, 43 St.Rep. 1891, 1893; In Re the Marriage of Hamill (Mont. 1987), 732 P.2d 403, 406, 44 St.Rep. 220, 222. Where an appellant fails to prove either arbitrariness or excess in judicial exercise, we will uphold the District Court since we presume the judgment of the District Court is correct. Marriage of Jensen, 727 P.2d at 515.

On December 11, 1986, the court heard testimony from both parties to the dissolution. This exchange occurred while Barbara Kramer was testifying:

> Q. [By Mr. Nye] When the property of the marriage was divided, what portion of the property did you get?
>
> A. I got $3,000.00 down on a mobile home, and a dresser, and stereo, and the T.V., and some of the things like sheets and towels and such.
>
> Q. What happened to the ranch property and equipment and all of that?
>
> A. Dick got all of that, because he said that if I fought for any of the farm that the kids wouldn't be able to farm. So that was the way we arranged it. And we agreed to that, that he would have the farm and help the boys get started farming.
>
> Q. In your understanding was the providing of a beef animal part of the property settlement?
>
> A. I would say yes.
>
> . . .

Dick Kramer testified that he had not provided beef or money in lieu of beef since 1980 because he and his former wife had agreed to end that provision. He testified, in part, as follows:

4

Q. [By Mr. Nye] Do you have proof of that agreement?

A. No, I don't.

Q. Was it written?

A. No.

Q. Was it oral?

A. Yes.

Q. Was there any witnesses?

A. No.

Q. What were the terms of the agreement?

A. I talked to her about being the boys were now with me, three of them, that I couldn't afford it. Farming was bad. I asked her if I could not have to give [the beef]. And there was an argument. And she agreed to it. And that was the last time she asked for it.

. . .

He added that the beef provision "was a maintenance thing. That is what her lawyer had said to me;" and that he has received the bulk of the marital property, but "[t]here wasn't much to give."

The District Court found that Dick Kramer was obligated to deliver free of charge one beef per year, that he had failed to do so for the years 1981-1986, and that there was insufficient evidence to show that the parties had agreed to end that obligation. Its conclusion that the provision represents a property settlement was based on "the disproportionate distribution of marital property under the parties' property settlement agreement . . . " The court's findings were based on the evidence placed before it; its conclusions of law stemmed from those findings and are not arbitrary nor do they exceed the bounds of reason. This

5

Court neither retries questions of fact, nor does it reverse District Court findings that are based on substantial evidence. In Re the Marriage of Hilt (Mont. 1984), 679 P.2d 783, 787, 41 St.Rep. 604, 609. Thus, we affirm the District Court's decision that this provision divided marital property.

The parties were unable to agree on the reasonable value of the undelivered beef. Barbara Kramer surveyed various meat markets. She then submitted a claim for $5,625. She calculated that a 500 to 600 pound carcass at $1.35 per pound for "choice" cuts would cost between $675 and $810. Thus, she placed a value of $750 a beef, multiplied it by six years and added 10 percent interest. Dick Kramer, meanwhile, made a non-negotiable offer to "settle all past, present, and future beefs that would supposedly be owed" for $3,000.

The court heard testimony on the valuations on April 2, 1987. On April 20, 1987, it ordered Dick Kramer to pay Barbara Kramer $2,530.68 for the six missed deliveries. The court dismissed Barbara Kramer's figures because "it was the intent of the parties to have the respondent [Dick Kramer] butcher and process one of his own beef animals . . . Petitioner's figures are too high because they are based on current retail meat market prices." Instead the court assumed a 550 pound carcass and used U.S. Department of Agriculture commodity figures for 1981 through 1986. Its calculations were:

> $61.35 (average of commodity figures for 1981-1986 per hundred weight) multiplied by 5.50 (pounds) equals $337.43 (average value of animal to Respondent per year).
>
> $337.43 x 6 years = $2,024.58
>
> Interest: 10% of $337.43 = $33.74 per year.
>
> 1981  5 years x 33.74 =   168.70
> 1982  4 years x 33.74 =   134.96

```
1983  3 years x 33.74 =   101.22
1984  2 years x 33.74 =    67.48
1985  1 years x 33.74 =    33.74
1986  0 years x 33.74 =     0

TOTAL INTEREST        =  $506.10

$2,024.58  (value of animal to Respondent
               for 6 years)
 +506.10   (total interest)

$2,530.68  TOTAL AMOUNT DUE
```

Barbara Kramer asks that we vacate the order valuing her claim at $2,530.68. The valuation is an abuse of discretion. The terms of the property settlement dictate that she was to receive one beef each year "free of charge" from her former husband. Such was reiterated by the District Court in its first set of findings when it said Barbara Kramer was due "the reasonable value of one (1) cut, wrapped, frozen and delivered beef each year . . . " In its calculations it then used figures that purport to represent the cost of beef on the hoof to Dick Kramer, not the value of butchered meat to Barbara Kramer. Such a valuation appears to charge Barbara Kramer for the cutting and wrapping. The District Court must provide reasons for its valuation. Marriage of Rolfe, 699 P.2d at 83; In Re the Marriage of Glass (Mont. 1985), 697 P.2d 96, 101, 42 St.Rep. 328, 332; In Re the Marriage of Wolfe (1983), 202 Mont. 454, 459, 659 P.2d 259, 262. It stated its reason as being that the parties intended Dick Kramer to butcher one of his own animals for delivery to Barbara Kramer. However, for six years Dick Kramer did not make such deliveries.

In a property dispute, the District Court may assign any value that is within the range of figures presented into evidence. In Re the Marriage of Johnston (Mont. 1986), 726 P.2d 322, 325, 43 St.Rep. 1808, 1812; In Re the Marriage of Reich (Mont. 1986), 720 P.2d 286, 288, 43 St.Rep. 1167, 1169. The District Court's value of $337.43 per delivery of beef is

7

not supported in the record. Dick Kramer's own testimony shows that his animals were worth considerably more:

> Q. [By Mr. Arndorfer] When you got these figures that are listed on Defendant's Exhibit A, did you use them then to determine what you could have sold a steer for, 800 or 900 pound steer for each year?
>
> A. Yes.
>
> Q. Could you tell us what it would have cost, or what that steer was worth in 1981?
>
> A. 1981, it would have been worth $540.00.
>
> Q. 1982?
>
> A. Five hundred sixty-seven dollars.
>
> Q. 1983?
>
> A. Five hundred fifty-eight dollars.
>
> Q. 1984?
>
> A. Five hundred ninety-four dollars.
>
> Q. 1985?
>
> A. Five hundred thirty-one dollars.
>
> Q. 1986?
>
> A. Five hundred four dollars. In 1987, $594.00.
>
> Q. Do you have a total of what that would cost you?
>
> A. Three thousand eight hundred eighty-eight dollars.

Defendant's Exhibit A is a U.S. Department of Agriculture statement showing live-weight prices from which the court ultimately derived its figures for the value of butchered meat. The court, though, did not need to attempt such a

8

calculation as Dick Kramer already had testified on the basis of those figures. He had testified that even in the worst year his steer would have been worth $504, not the $337.43 assigned by the court. He also testified that the total value for six years of undelivered beef would cost him $3,888 (not including interest), not the $2,530.68 (including interest) assigned by the court.

The court's figures are mistakenly low. This is because the court assigned a value based on live-weight prices to the butchered beef. We vacate the order of April 20, 1987 and remand the question of the value of the beef to the District Court for reevaluation in light of this opinion.

Affirmed in part, reversed in part.

_____
Justices

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9