No.   90-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF
TOM GERHART,

Petitioner and Respondent,

and

B.J. GERHART,

Respondent and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Daniel L. Falcon, Matteucci & Falcon, P.C., Great
Fall, Montana

For Respondent:

Keith Tokerud, Scott & Tokerud, Great Falls, Montana

Submitted on Brief:   October 3, 1990

Decided:   November 8, 1990

Filed:

FILED
'90 NOV 8 AM 11 41
ED SMITH, CLERK
MONTANA SUPREME COURT

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

In December of 1989, the Cascade County District Court entered a decree of dissolution of the marriage of Tom Gerhart and B.J. Gerhart. B.J. appeals from the property settlement. We affirm.

The issues for review are:

1. Whether the District Court clearly abused its discretion by failing to offer a coherent plan regarding distribution of the marital property.

2. Whether the District Court created a reversible inequity by failing to value or divide interest accumulated from the parties' joint investments between the date of valuation and the date of actual division.

3. Whether the District Court abused its discretion by accepting valuations which were erroneous and inaccurate.

4. Whether it is appropriate for the District Court to consider temporary maintenance as an asset of the marital estate.

Tom filed a petition for dissolution and a hearing was held on January 16, 1989. The District Court issued its findings of fact, conclusions of law, and order on December 7, 1989. In this order, the District Court awarded B.J. (1) all of her pre-marital assets; (2) all of the inheritances she received during the marriage; (3) all the gain realized during the marriage on her pre-marital assets and inheritances; and (4) forty percent of the gain during the marriage from the ranching operation that Tom brought to the marriage. The District Court also awarded B.J. maintenance of $250 per month for five years and $7,500 for attorney's and

2

accountant's fees. B.J. entered post-trial motions with the District Court December 26, 1989, citing numerous alleged errors by the District Court. A hearing was held on March 2, 1990 on B.J.'s post-trial motions. All motions were denied except one which cited a typographical error. Thereafter, on March 5, 1990, the District Court entered its final judgment and decree from which B.J. now appeals. We affirm.

Tom and B.J. were married in Great Falls, Montana, April 10, 1976. No children were born during the marriage nor was B.J. pregnant at the time of the dissolution proceeding.

B.J., age 60 at the date of dissolution, is of average good health. B.J. completed high school and two years of college. She most recently worked in the pharmacy of the Great Falls Clinic for fifteen years. Prior to that job she had worked in commercial establishments in Portland, Oregon.

Tom was 54 at the date of dissolution. Tom had begun ranching south of Belt, Montana in 1963 and has continued ranching to the present date.

Tom testified that the parties had been separated on and off for several years before 1987, when they did finally separate on September 30, 1987. Tom filed a petition for dissolution in June, 1987.

In its findings of fact, the District Court considered the parties' health and station in life. The District Court also considered the parties' property on the date of the marriage as well as the parties' property acquired during the marriage and said

property on their date of separation.

B.J.'s accountant testified at trial that the marital estate had gained $221,800 during the marriage. The District Court rejected this value because the analysis was not based on the change in fair market value of the assets nor did it consider B.J.'s income or inheritance during the marriage. Tom's accountant, on the other hand, contended that the marital gain was $100,882.98. The District Court found the gain in the marital estate during the marriage to be $154,986.

Additional facts will be discussed as needed.

As her first assignment of error, B.J. claims the District Court abused its discretion in distributing property of the marital estate. Specifically, B.J. claims the "division fails to have any reasonable clarity and is plagued by internal conflicts and discrepancies. As a result it is not possible to determine how the marital estate was in fact divided."

Conflicting evidence was before the District Court in the present case. When confronted with conflicting evidence, the court must use its fact-finding powers to determine which evidence is more credible. Having had the opportunity to observe the witnesses, the trial court is in a position superior to that of the appellate court to judge the credibility of the testimony. In re the Custody of Holm (1985), 215 Mont. 413, 418, 698 P.2d 414, 417. Absent a clear abuse of discretion by the trial judge, this Court will not overturn the distribution of marital property. In re the Marriage of Dirnberger (1989), 237 Mont. 398, 401, 773 P.2d 330,

4

332.

Section 40-4-202, MCA, sets forth factors which the court must consider when making a distribution of marital property. However,

> While articulation of these factors is encouraged, the absence of specific findings does not automatically warrant remand:
>
> "It is not the lack of specific findings which constitute reversible error, but the lack of substantial evidence to support the judgment. We look both to the District Court's express reasoning and the evidence in the record to determine whether ample evidence exists."

In re the Marriage of Hundtoft (1987), 225 Mont. 242, 244, 732 P.2d 401, 402, quoting In re the Marriage of Peterson (1984), 211 Mont. 118, 683 P.2d 1304. The lower court need not articulate each factor separately as long as the findings are sufficient to allow nonspeculative review by this Court.

> Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented.

In re the Marriage of Jensen (Mont. 1981), 631 P.2d 700, 703, 38 St.Rep. 1109, 1113. On review, this Court examines both the trial court's express reasoning as well as the evidence in the record.

B.J. contended the gain in the marital estate was $221,800 while Tom contended the gain to be $100,882.98. The court considered the testimony from each party's expert, rejected both valuations and found the gain in the marital estate to be $154,986. The court then awarded B.J. forty percent of this gain to be paid out of a joint investment fund made up of proceeds from the sale

5

of cattle from the ranch. We have held that a district court is free to find a value for marital property within the range of evidence submitted. In re the Marriage of Kramer (1987), 229 Mont. 476, 747 P.2d 865. Here the District Court valued the marital gain to be $154,986. The value is well within the range of evidence submitted and was thoughtfully arrived at by the District Court.

We find no error. The District Court valued the marital gain, awarded B.J. forty percent of this gain and provided her a way to get it, namely out of the joint investment fund. We find that this valuation and distribution is equitable and quite coherent. The record reflects the fact that the District Court considered the factors set out in § 40-4-202, MCA, when making the distribution of marital assets. Furthermore, the distribution plan is plain, simple, short and clear. Upon review, it is apparent that the trial judge attempted to value the marital estate and to distribute the property equitably and to support his distribution with adequate findings. We find no abuse of discretion and uphold the District Court's valuation and distribution of the marital gain.

As her second assignment of error, B.J. claims the District Court erred by failing to value or divide interest accumulated from the parties' joint investment between the date of valuation and the date of actual division.

The District Court valued the marital estate as of September, 1987 and specifically valued the marital gain as totalling $154,986. Thereafter, the District Court entered its dissolution decree on December 7, 1989 and awarded B.J. forty percent of the

6

marital gain to be paid out of the parties' joint investment fund. At this point note that B.J. was <u>not</u> awarded rights to the joint investment fund but rather was awarded forty percent of the marital gain <u>to be paid out of</u> the joint investment fund. From September, 1987 until December, 1989, the parties' joint investments, which totalled $68,874.71 as of September 1987, accrued interest of over $10,000. B.J. argues, without citing any case law or statutory authority, that she is entitled to an equitable portion of this accumulated pre-judgment interest on the joint investment fund. We disagree.

The correct rule in this jurisdiction is that interest is not allowable until the exact amount due is ascertained or is ascertainable. Daly v. Swift & Co. (1931), 90 Mont. 52, 300 P. 265. In this case, the amount due B.J. was not ascertained (or ascertainable) until December 7, 1989, when the District Court entered its decree. Therefore, interest is allowable only from December 7, 1989. We hold that no reversible inequity exists in the record regarding prejudgment interest.

B.J.'s third assignment of error is whether the District Court abused its discretion by accepting a number of valuations which were erroneous and inaccurate. B.J. first argues that the depreciation method used by Tom to value his machinery and equipment was fatally flawed in that the method only considered depreciation during the marriage rather than depreciation during the entire life of the machinery and equipment.

Specifically, B.J. points out that the District Court valued

Tom's "PTO baler" on the date of marriage, in 1976, for the same amount Tom had originally paid for it in 1963. B.J. contends that this constitutes an abuse of discretion of the District Court. We disagree.

At trial, Tom testified without contradiction that he purchased the baler in 1963, at cost, for $2,700 while its fair market value was $4,500. Tom further testified that in 1976, as of the date of the marriage, the baler then had a fair market value of $2,700. However, by 1987, ranchers had switched to the new round balers, and Tom and his expert both testified that the obsolete "PTO baler" was only worth $150. As such, the record reflects that the depreciation method used by Tom considered depreciation during the entire life of the machinery and equipment. There was no abuse of discretion. B.J. next states that "This erroneous method of depreciation was apparently implemented by Tom on all machinery purchased prior to the marriage." We find no evidence in the record which supports this claim.

B.J. alleges other errors in the District Court's findings. In short, we have reviewed the entire record before us and find that there is no credible evidence to substantiate any of her claims that the District Court abused its discretion. We affirm the District Court.

As her fourth and last assignment of error, B.J. asserts that the District Court erred by considering temporary maintenance as a marital asset. The District Court ordered Tom to pay $750 per month to B.J. during the course of the divorce because she had

access to only her funds. At a later date the District Court found that B.J.'s share of the property division should be reduced by the amount of this temporary maintenance paid by Tom. Accordingly, the District Court reduced B.J.'s share of the property division by $20,250. B.J. claims this was a reversible error because, in so doing, the District Court was essentially treating temporary maintenance as an asset of the marital estate.

B.J. cites In re the Marriage of Lundvall (Mont. 1990), 786 P.2d 10, 47 St.Rep. 173, for the proposition that temporary maintenance payments cannot be considered as a marital asset. This is not what we held in Lundvall. In Lundvall we said that one of the factors the court should consider when making a maintenance award is whether the spouse seeking the award "will receive sufficient property to provide for the spouse's needs (§ 40-4-203(1)(a), MCA), the term 'sufficient property' means income-producing, not income consuming." Lundvall at 12, 47 St.Rep. at 175. We then characterized the "asset" of temporary maintenance already received by the wife as not income-producing. Accordingly, we said that the total amount of temporary maintenance received by the wife from the husband is not to be considered a marital asset when making a maintenance award. In this case, the District Court was making a property distribution and charged B.J. for the property already received in the form of temporary maintenance payments. We hold that this was an equitable arrangement and not an abuse of discretion on the part of the District Court. The District Court is hereby affirmed.

_John Conway Harrison_
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices