No. 98-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 278N

LAURIE DEBUFF,

Petitioner and Appellant,

v.

HAROLD DEBUFF,

Respondent and Respondent.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary S. Deschenes and Randy L. Tarum, Deschenes Law Office;

Great Falls, Montana

For Respondent:

Jock B. West, West, Patten, Bekkedahl & Green, P.L.L.C.;

Billings, Montana

---

Submitted on Briefs: April 29, 1999

Decided: November 23, 1999

Filed:

---

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

2. ¶ On November 6, 1997, Laurie DeBuff filed a petition for dissolution in the Tenth Judicial District Court, Fergus County. At the conclusion of the hearing on the matter, the District Court announced its findings and order, which were later incorporated in its Findings of Fact, Conclusions of Law and Order. Following entry of the Final Decree of Dissolution of Marriage, Laurie DeBuff filed a Motion to Amend Findings and/or Make Additional Findings; Motion to Alter or Amend Judgment; Motion for New Trial; Motion for Relief from Judgment. These motions were denied by the District Court. Laurie DeBuff appeals from the District Court's order denying her posthearing motions and the Final Decree of Dissolution of Marriage and Findings of Fact, Conclusions of Law and Order. We affirm in part and reverse in part.

3. ¶ Laurie raises the following issues on appeal:

4. ¶ 1. Did the District Court abuse its discretion when it failed to consider the tax

implications and liquidation costs associated with the grain, equipment, and machinery it awarded to Laurie?

¶ 2. Did the District Court abuse its discretion when it adopted values for the farm and personal property?

¶ 3. Did the District Court abuse its discretion when it awarded both the parties' residences to Harold?

¶ 4. Did the District Court fail to consider all the marital assets and liabilities in making its Findings of Fact, Conclusions of Law and Order?

¶ 5. Did the District Court fail to make an equitable division of the marital estate?

## FACTUAL BACKGROUND

¶ Laurie and Harold DeBuff were married on February 4, 1978. A short time later, the couple acquired property in Fergus County, Montana, consisting of 28 acres. Then in 1982, the couple acquired a farm located in Wheatland County, Montana, consisting of 2360 acres. From the date of acquisition, the couple operated the farm throughout their marriage. At the hearing, Harold's counsel stipulated on Harold's behalf that Laurie's contributions as a homemaker were equal to Harold's contributions as the wage earner.

¶ In addition, on occasion during the marriage Laurie worked various part-time jobs and Harold worked as an equipment operator for a road construction company. In May 1997 Laurie went to work as a clerk for IGA in Lewistown, Montana. The couple separated on September 30, 1997. At the time of the hearing, Laurie was still employed at IGA and Harold continued to run the farm and work as an equipment operator.

¶ Following the couple's separation, Laurie rented an apartment and later a house in Lewistown, Montana. Harold and the couple's two minor sons lived on the property in Fergus County. In addition, Harold had rented out the residence located on the farm in Wheatland County.

¶ At the dissolution hearing, Laurie expressed her desire to have the marital assets sold and the proceeds divided between the parties in order to enable her to purchase her own home. In addition, Laurie expressed concerns about Harold's proposal to pay her a lump sum over time for her share of the marital assets. These concerns prompted discussion of some type of security arrangement being placed on the property until Laurie was paid in full.

¶ After hearing one and a half days of testimony and evidence, the District Court awarded Harold the farm in Wheatland County, the property in Fergus County,

miscellaneous personal property and accounts receivable. Harold's total distribution was valued at $334,439. Laurie was awarded farm machinery and equipment, grain, vehicles, and miscellaneous personal property. Laurie's total distribution was valued at $346,513. In addition, the District Court gave Laurie three weeks to remove the items from the farm.

14. ¶ Alleging that the District Court's final distribution was inequitable, Laurie filed a motion to amend the findings and/or make additional findings, to alter or amend the judgment, for a new trial, and for relief from the judgment. Laurie's primary contention was that the District Court should have considered the tax consequences and liquidation costs associated with its property distribution. Laurie also challenged the values the District Court attached to the farm machinery and equipment and the real property located in Wheatland County. In addition, Laurie argued that the District Court should not have awarded both the marital residences to Harold, leaving her with none.

15. ¶ On June 14, 1998, the District Court entered an order denying Laurie's motions. Laurie appeals from this order, the final decree of dissolution, and the findings of fact, conclusions of law, and order.

## STANDARD OF REVIEW

16. ¶ We review the division of marital property by a district court to determine whether the findings upon which the district court relied are clearly erroneous. *See In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26; *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 979 P.2d 193, ¶ 14, 56 St.Rep. 373, ¶ 14, (citations omitted). "If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion." *Engen*, ¶ 26 (citations omitted).

17. ¶ Additionally, we review discretionary rulings, including marital estate distributions and the valuations of marital property, to determine whether the district court abused its discretion. *See In re Marriage of Rada* (1994), 263 Mont. 402, 405, 869 P.2d 254, 255. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Engen*, ¶ 26 (citation omitted).

## ISSUE 1

18. ¶ Did the District Court abuse its discretion when it failed to consider the tax implications and liquidation costs associated with the grain, equipment, and machinery it awarded to Laurie?

19. ¶ Laurie argues that the District Court failed to consider the tax consequences and liquidation costs of its marital property distribution, which renders the distribution inequitable. In response, Harold contends that the District Court did take into account the tax consequences of the property distribution as evidenced by the District Court's order denying Laurie's combined motions.

20. ¶ Despite the evidence presented at the hearing on Laurie's combined motions with respect to the tax consequences and liquidation costs associated with the property distribution, the District Court stated the following in its order denying her motions:

Petitioner believes the Court failed to take into account income tax consequences of the distribution. The court gave all consideration to the tax consequences of the distribution possible, based on the testimony presented at trial.

. . . .

. . . The Petitioner forgets that liquidation creates selling expenses and income tax consequences whether real property is sold or farm equipment is sold. Petitioner did not want to receive payments from Respondent. The only other equitable division was to divide the property. Petitioner is not required to sell this property under the decree, and thus there is no immediate and concrete tax liability. This sale decision is a post trial decision made by her.

However, as Laurie pointed out in her combined motions, neither party proposed or contemplated a partial sale of the marital assets and as such, no extensive testimony was given regarding the tax liabilities or liquidation costs associated with such a distribution at the dissolution hearing. Laurie had proposed a total liquidation of the marital assets with all costs of sale and tax liabilities shared equally by the parties prior to distribution of any proceeds. Harold proposed no sale at all, but rather payment over time to Laurie with no interest for her portion of the marital assets.

21. ¶ Nevertheless, extensive testimony was offered at the hearing on Laurie's combined motions regarding the tax consequences and liquidation costs associated with the property distribution. Laurie presented the testimony of a certified public accountant who estimated Laurie's tax liability from the potential gain on the sale of the

equipment and the grain to be approximately $117,000. This witness also estimated sales commission and liquidation costs of 10 percent, plus advertising costs of 2 percent. Another witness, the owner of an auction firm in the business of selling farm equipment, confirmed that liquidation costs on the equipment would be 10 percent, plus advertising at an average cost of $3000 to $3500.

22. ¶ Section 40-4-202, MCA, sets forth the criteria a district court must consider when equitably apportioning marital assets in a dissolution proceeding:

In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, *liabilities*, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

Section 40-4-202, MCA (1997) (emphasis added). The liabilities of the parties are specifically enumerated as a factor a district court must consider in its equitable apportionment of marital property.

23. ¶ With regard to tax consequences, we have previously held that a district court's "failure to address the tax consequences of the distribution of property" amounts to an abuse of discretion. *In re Marriage of Lee* (1991), 249 Mont. 516, 519-20, 816 P.2d 1076, 1078. In *Lee*, we stated:

In relation to tax liabilities, this Court has held that "where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment."

249 Mont. at 519, 816 P.2d at 1078 (quoting *In re Marriage of Beck* (Mont. 1981), 631 P.2d 282, 285, 38 St.Rep. 1054, 1058). We required the District Court in *Lee* to make specific findings regarding the potential tax consequences of the distribution of the marital estate and to indicate how the tax liabilities would be accounted for in the distribution. *See Lee*, 249 Mont. at 519, 816 P.2d at 1078.

24. ¶ In this case, the District Court awarded grain and farm machinery and equipment to a wife who had moved off the farm and was employed as a grocery store clerk. In addition, the District Court only gave her three weeks to remove the property from the farm. Harold attempts to assert that Laurie could have rented out the farm equipment to generate income. However, no evidence was presented at the hearing regarding the rental market or income-producing potential for such equipment. In addition, there was no evidence presented regarding Laurie's qualifications or desire to engage in the business of equipment rental. The only reasonable conclusion that can be reached from the evidence presented at the hearings and the District Court's distribution is that Laurie would have to sell the grain and equipment. The District Court incorrectly interpreted *Lee* when it stated that its distribution did not cause an immediate and concrete tax liability. Thus, we conclude that the District Court abused its discretion when it failed to take into account the parties' liabilities, which include tax consequences and liquidation costs, in its distribution of the marital property.

## ISSUE 2

25. ¶ Did the District Court abuse its discretion when it adopted values for the farm and personal property?

26. ¶ We will begin with the personal property. At the dissolution hearing, both parties presented testimony as to the values of the personal property. The values Laurie presented were taken from a financial statement signed by both parties in 1997 for the purpose of obtaining a bank loan. Harold testified, however, that he did not believe the financial statement fairly reflected the equipment's fair market values because these values were "rounded up" to "make it look good." Harold also had an agricultural implement dealer testify that people normally inflate values on financial statements and that the values of this particular farm equipment were considerably less.

27. ¶ Based on this testimony, Laurie argues that the District Court's findings with regard to the values from the financial statement were not supported by substantial credible evidence. Harold contends that Laurie has no basis to complain since the District Court adopted the values she provided. In its order denying Laurie's posthearing motions, the District Court stated that for the most part it had adopted Laurie's values because it appeared that Harold was understating values.

28. ¶ With regard to a district court's determination of the valuation of marital property, we have previously stated:

A district court has far reaching discretionary powers to determine the value of property in a dissolution action. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. As long as the valuation is reasonable in light of the evidence submitted, we will not disturb that finding on appeal.

*In re Marriage of Milesnick* (1988), 235 Mont. 88, 94-95, 765 P.2d 751, 755 (citations omitted). In relation to property valuations in a dissolution proceeding, we have also stated that:

It is well settled law that "[w]hen there is a dispute over property in a marriage dissolution, the district court may assign any value that is within the range of values presented into evidence." "However, if the values are widely conflicting, then the district court must state its reasons for determining a certain value."

*In re Marriage of McNellis* (1994), 267 Mont. 492, 499, 885 P.2d 412, 416 (quoting *In re Marriage of Taylor* (1993), 257 Mont. 122, 127, 848 P.2d 478, 481) (citations omitted).

29. ¶ Accordingly, we find that the District Court did not err when it adopted values for the personal property from the financial statement presented by Laurie. These values were premised on a combination of the 1997 financial statement signed by both the parties for the purpose of obtaining a bank loan as well as lay witness and expert testimony. There is no abuse of discretion where, as here, the court has adopted a reasonable valuation of marital property supported by the record. *See Rada*, 263 Mont. at 405, 869 P.2d at 255-56 (citing *In re Marriage of Luisi* (1988), 232 Mont. 243, 756 P.2d 456).

30. ¶ Next, we consider the real property. Laurie argues that the District Court erred when it adopted a value for the farm property that contained computation errors and did not include the value of conservation reserve program (CRP) contracts or buildings located on the property. The land has been described as 2360 acres of dry-land farm: 1400 acres of planted land, 340 acres of conservation reserve program (CRP) land, and the remainder is native grasses.

31. ¶ Laurie presented expert testimony from a farm and ranch appraiser, who gave his estimate of the fair market value of the property. Using three methods, a cost approach, a sales comparison approach, and an income approach, he valued the land at $538,785, plus improvements of $33,000. Another witness, a farm and ranch

realtor, estimated the dry-land farm and CRP land to be worth $250 to $275 an acre, the native grassland to be worth $80 to $100 an acre and the buildings at $30,000. His total valuation was $516,000 to $572,000.

32. ¶ Harold presented testimony from a real estate broker who had sold property adjacent to the DeBuff farm. She valued the dry-land farm and CRP land at $175 to $185 an acre and the grass land at $85 an acre, for an average of $150 an acre. The District Court assigned the average per acre figure to its own calculations and arrived at a value of $354,000 for the land, and added $45,000 for the buildings and grain bins.

33. ¶ Laurie alleges there were computation errors in the real estate broker's valuation of the Wheatland County property. Laurie argues that since the real estate broker's opinion was based on prior sales, she should have been required to use the per acre values from her sale of property adjacent to the DeBuff farm. However, the real estate broker testified at the hearing that she had marketed the adjacent property at a higher price than the area and sold it at a recreational price rather than at a farm price.

34. ¶ Laurie assumes that only a comparative sales analysis can be used to establish the value of the DeBuff property. However, the District Court relied on available credible evidence, which was offered by the real estate broker who had sold property adjacent to the DeBuff farm. In doing so, the District Court reasoned that:

As far as the land goes, the farm, I am going to award the farm to Harold, give that a value of $399,000. How I arrived at that value I assigned Carole Songer's land value of $354,000 to the dirt, and I picked that, decided that is a little better valuation, from my view, from a review of things, primarily because she had the experience of actually selling land in the area. There is nothing like going out and trying to sell dirt somewhere to find out what it's really worth. You know, you can surmise and speculate and comparable-sale all you want.

35. ¶ We defer to the District Court's ability to judge the credibility of witnesses and to resolve any conflicts in the evidence. *See In re Marriage of Pearson*, 1998 MT 236, ¶ 56, 291 Mont. 101, ¶ 56, 965 P.2d 268, ¶ 56. In that regard, we have stated:

When confronted with conflicting evidence, the court must use its fact-finding powers to determine which evidence is more credible. Having had the opportunity to observe the witnesses, the trial court is in a position superior to that of the appellate court to judge the credibility of the testimony. Unless there is a clear preponderance

of the evidence against the District Court's valuation, its findings, where based on substantial though conflicting evidence, will not be disturbed on appeal.

*Milesnick*, 235 Mont. at 95, 765 P.2d at 755 (citations omitted).

36. ¶ Here, the District Court chose to adopt the valuation of the property presented by a real estate broker who had actually sold property in the area and stated its reason for doing so. As previously noted, the district court may assign any value that is within the range of values presented into evidence. *See McNellis*, 267 Mont. at 499, 885 P.2d at 416. In addition, while the values were widely conflicting the District Court provided the basis for its decision to adopt the value presented by the real estate broker.

37. ¶ In relation to Laurie's argument that the value of the property adopted by the District Court did not incorporate an additional per acre value based on the CRP contracts, this does not concern us. In its order, the District Court accounted for the CRP contracts by awarding them separately to Harold as accounts receivable. In addition, the District Court accounted for the value of the buildings and grain bins located on the property by adding an additional $45,000 to the value of the land presented by the real estate broker. Thus, we conclude that the District Court did not err in adopting the real estate broker's value for the farm. Therefore, there was no abuse of discretion.

## ISSUE 3

38. ¶ Did the District Court abuse its discretion when it awarded both the parties' residences to Harold?

39. ¶ Laurie argues that while the District Court has discretion in dividing the marital property, the District Court should be guided by principles of equity. Laurie asserts that neither common sense nor the District Court's findings of fact provide any guidance to determine how equity was served by awarding both marital homes to Harold and leaving Laurie to rent housing. Harold asserts that when the overall scheme of the marital distribution is considered, there is no abuse of discretion by the District Court.

40. ¶ At the conclusion of the hearing, the District Court stated its reasoning for awarding the residence located in Fergus County to Harold:

I awarded that to Harold. The primary reason for doing that is because he has those

two boys living with him, and they need a place to stay. They are all settled in there. They had furniture in there. That's best for the kids. That's the big reason I put that there.

However, the District Court did not provide any basis for also awarding the residence in Wheatland County to Harold.

41. ¶ As mentioned previously, the guidelines for the division of marital property in a dissolution proceeding are contained in § 40-4-202, MCA. Findings of fact and conclusions of law provide the foundation for a district court's judgment. *See In re Marriage of Stratford* (1981), 193 Mont. 195, 197, 631 P.2d 296, 298. "This foundation need not consist of a multitude of evidentiary facts, but the findings of fact must set forth a recordation of the essential and determining facts upon which the court rested its conclusions of law and without which the judgment would lack support." *Stratford*, 193 Mont. at 197-98, 631 P.2d at 298 (citation omitted).

42. ¶ We have reviewed the evidence presented and examined the District Court's Findings of Fact, Conclusions of Law and Order. This review has revealed that the District Court failed to make findings with regard to the criteria set forth in § 40-4-202, MCA (1997), pertinent to the division of the marital property in this case. The District Court did not give any explanation for awarding both residences to Harold, which prevents us from adequately reviewing the equity of the distribution. Therefore, we conclude that the District Court abused its discretion in awarding both marital residences to Harold.

## ISSUE 4

43. ¶ Did the District Court fail to consider all the marital assets and liabilities in making its Findings of Fact, Conclusions of Law and Order?

44. ¶ Based on our resolution of Issue 1, we do not consider this issue in detail. We have already determined that the District Court failed to consider all the liabilities associated with the property distribution contained in its Findings of Fact, Conclusions of Law and Order. Accordingly, we conclude that the failure to consider all liabilities associated with its property distribution was an abuse of discretion by the District Court.

## ISSUE 5

45. ¶ Did the District Court fail to make an equitable division of the marital estate?

46. ¶ Laurie asserts that the District Court abused its discretion by not making findings pursuant to the statutory guidelines contained in § 40-4-202, MCA (1997). Harold contends that since Laurie received more than half of the marital estate and that it was her decision to sell the property awarded to her, Laurie is responsible for the consequences and that this does not constitute an inequitable settlement.

47. ¶ A District Court need not articulate each factor contained in § 40-4-202, MCA, separately so long as the findings are sufficient to allow nonspeculative review by this Court. *See In re Marriage of Gerhart* (1990), 245 Mont. 279, 282, 800 P.2d 698, 700-01. While articulation of these factors is encouraged, the absence of specific findings does not automatically warrant remand. *See Gerhart*, 245 Mont. at 282, 800 P.2d at 700. The test for the adequacy of findings of fact is "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." *Gerhart*, 245 Mont. at 282, 800 P.2d at 701 (citation omitted). It is not the lack of specific findings that constitutes reversible error, but the lack of substantial evidence to support the district court's judgment. *See Gerhart*, 245 Mont. at 282, 800 P.2d at 700 (citations omitted). Consequently, we review both the District Court's reasoning as well as the evidence in the record.

48. ¶ Unfortunately, the District Court's findings are devoid of any reference to the statutory criteria for the division of marital property contained in § 40-4-202, MCA (1997). Therefore, we remand this matter to the District Court for a redetermination of the division of marital property in accordance with the statutory criteria set forth in § 40-4-202, MCA (1997).

49. ¶ Accordingly, we affirm in part and reverse in part the judgment of the District Court. We affirm the District Court's adoption of values for the personal property presented by Laurie and the adoption of the real estate broker's value for the property in Wheatland County. We reverse the District Court's property distribution insofar as it failed to consider the liabilities associated with such distribution and failed to consider the mandatory statutory criteria for division of marital property. Therefore, we remand this cause to the District Court for redetermination of the distribution of the marital estate in accordance with § 40-4-202, MCA (1997).

50. ¶ Affirmed in part, reversed in part and remanded.

/S/ JIM REGNIER

We Concur:

No

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART