No. 01-233

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 159

IN RE THE MARRIAGE OF,

LAURIE M. DeBUFF,

       Petitioner and Appellant,

   and

HAROLD DeBUFF,

       Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
                 In and for the County of Fergus,
                 The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Gary S. Deschenes, Deschenes Law Office, Great Falls, Montana

       For Respondent:

              Jock B. West, West, Patten, Bekkedahl & Green, Billings, Montana

Submitted on Briefs:  January 31, 2002

Decided:    July 16, 2002

Filed:

_____
                         Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The Petitioner, Laurie M. DeBuff, appeals from an Order issued by the District Court for the Tenth Judicial District in Fergus County which redistributed the marital estate between her and the Respondent, Harold DeBuff, following this Court's opinion in *DeBuff v. DeBuff*, 1999 MT 278N.  Harold cross-appeals the District Court's failure to consider his tax consequences as a result of the District Court's Order.  We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

¶2     The following issues are presented on appeal:

¶3     1.     Did the District Court err when it redetermined and redistributed the DeBuff marital estate?

¶4     2.     Did the District Court correctly determine the prejudgment and postjudgment interest to which Laurie was entitled?

¶5     3.     Did the District Court err by not considering the tax consequences to Harold which would result from the redistribution of the marital estate?

FACTUAL AND PROCEDURAL BACKGROUND

¶6     This is the second appeal from the District Court in this case.  Because the primary issue, the distribution of the marital estate, remains the same, it is helpful to summarize the relevant facts from our prior opinion, *DeBuff v. DeBuff*, 1999 MT 278N (*DeBuff I*) (a noncitable opinion).

¶7     Laurie and Harold DeBuff were married on February 4, 1978. Shortly thereafter, they acquired twenty-eight acres of property with a home in Fergus County, Montana.  In 1982, they acquired a farm, consisting of 2360 acres, in Wheatland County, Montana.  The

2

couple operated the farm throughout their marriage. Of the 2360 acres, 1400 is planted, 340 is in a Conservation Reserve Program and the balance is native grasses.

¶8 During the marriage, Laurie was primarily a homemaker. On occasion, Laurie worked various part-time jobs. In May 1997, Laurie went to work as a grocery clerk for the IGA in Lewistown, Montana, earning $6.00 per hour. Harold worked part-time as a road construction equipment operator, earning $17.45 per hour, and operated the farm.

¶9 The couple separated on September 30, 1997. On November 6, 1997, Laurie filed a Petition for Dissolution. A dissolution hearing was held on March 30 and 31, 1998. Laurie asked for assets "suitable for liquidation" in order to purchase a home. On May 13, 1998, the District Court issued its Findings of Fact, Conclusions of Law and Order, along with the Final Decree of Dissolution of Marriage. The District Court awarded Harold the properties in Wheatland County and Fergus County, miscellaneous personal property and the accounts receivable. Harold's total distribution was valued at $334,439. Laurie was awarded farm machinery and equipment, grain, vehicles, and miscellaneous personal property. Laurie's total distribution was valued at $346,513. In addition, the District Court gave Laurie three weeks to remove her share of the distributed items from the farm.

¶10 In *DeBuff I*, this Court affirmed in part and reversed in part. We reversed the District Court's division of the marital estate insofar as it failed to consider the liabilities associated with

the property distribution and failed to discuss any of the statutory criteria for the division of marital property found at § 40-4-202, MCA. We remanded for a redetermination and redistribution of the marital estate.

¶11 The District Court held an evidentiary hearing on March 22, 2000. On November 28, 2000, the District Court issued an Order in which it redetermined and redistributed the marital estate. To address the tax liability and liquidation costs associated with the sale of the grain, equipment and machinery, the District Court awarded Laurie an additional $66,728, "with said sum to bear interest at the rate of 7% from April 15, 2000. . . . On January 31, 2001, the interest rate is to increase to the legal rate on Judgments." The District Court also redistributed the marital estate based on the statutory criteria in § 40-4-202, MCA.

¶12 Following the filing of the Notice of Entry of Judgment, Harold filed a Motion for a New Hearing on Tax Liability, or in the alternative, sought to amend the order pursuant to Rules 52(b) and 59, M.R.Civ.P. A hearing was held on March 14, 2001, and the District Court denied Harold's motion, stating "[i]t is clear there was no newly discovered evidence, and thus no basis for a new trial."

¶13 Laurie filed a Notice of Appeal on April 3, 2001, challenging the District Court's redetermination and redistribution of the marital estate. On May 3, 2001, Harold filed a Notice of Cross-Appeal based on the District Court's failure to take into account

4

the tax liability he would incur based upon the redistribution of the marital estate.

## STANDARD OF REVIEW

¶14  We review a district court's division of marital property to determine whether the findings on which it relied are clearly erroneous.  *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.  If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion.  *Engen*, ¶ 26.

¶15  A district court's award of prejudgment interest is a question of law, and therefore, we examine whether the district court was correct in its application of the law.  *Semenza v. Bowman* (1994), 268 Mont. 118, 127, 885 P.2d 451, 456.  Whether a party is entitled to postjudgment interest is a conclusion of law which we review de novo.  *Tipp v. Skjelset*, 1998 MT 263, ¶ 11, 291 Mont. 288, ¶ 11, 967 P.2d 787, ¶ 11.

## DISCUSSION

### ISSUE 1

¶16  Did the District Court err when it redetermined and redistributed the DeBuff marital estate?

¶17  In *DeBuff I*, we held that the District Court erred in its distribution of the marital estate because it failed to consider the tax consequences and liquidation costs associated with the property distribution and failed to consider the mandatory statutory criteria for the division of marital property.  ¶ 49.  Therefore, we remanded to the District Court for a redetermination

5

of the marital estate and redistribution of that estate in accordance with § 40-4-202, MCA.

¶18 Laurie contends that the District Court erred when it redetermined and redistributed the marital estate for two reasons. First, Laurie asserts that the District Court failed to include $120,000 of unaccounted-for cash in its redetermination of the marital estate, and that the District Court's finding that the monies existence was "speculative" was clearly erroneous. Second, Laurie contends that although the District Court correctly included the tax consequences and liquidation costs associated with the property distributed to her, the District Court inequitably divided the estate.

¶19 In its November 28, 2000, Order, the District Court first considered the liabilities which had been excluded in the original determination of the marital estate:

> The issue before the Court is the tax liability and liquidation costs associated with the grain, equipment and machinery awarded to wife. The testimony presented shows the liquidation costs at $38,214 and a tax liability of $117,316, leaving wife with a deficiency as to her share of the marital estate. Although wife's accountant's testimony seems to the court to have overstated the tax and liquidation costs, the evidence otherwise available does not adequately support any different amount.

The District Court then subtracted those liabilities from what it had previously determined was the total marital estate:

> Previously, wife received $346,513 and husband received $334,439, with a total marital estate of $680,952. When this estate is reduced by the liquidation and sale costs of $155,530, this leaves a revised marital estate of $525,422, with an equal division of that amount being $267,711. To equalize the estates, recognizing that the property had been previously divided, the

6

> husband will have to pay to wife the sum of $66,728. This sum represents the reimbursement required to equalize the marital estate after wife paid the income tax consequences and sale expenses.

After review of Laurie's accountant's testimony, it appears the District Court inadvertently misstated the appropriate amount of tax liability by $180, which resulted in a figure of $117,316. The appropriate amount was $117,136, rather than $117,316. After correcting the District Court's error, the appropriate amount of liabilities (tax liability and liquidation costs) is $155,350, not $155,530. Therefore, the correct value of the revised marital estate is $525,602, not $525,422.

¶20 Laurie contends that the District Court erred when it refused to include in the marital estate approximately $120,000 of "missing money." According to Laurie, handwritten notes prepared by Harold for his accountant in 1997 show that income in that year exceeded expenses by approximately $120,000. Furthermore, Laurie contends that that amount has never been accounted for, nor denied by Harold, and, therefore, should be included in the marital estate. Although evidence relating to the "missing money" was presented to the District Court in the original trial, the District Court did not make any findings on the matter and refused to include the amount in its original determination of the marital estate.

¶21 However, in the November 28, 2000, Order, the District Court specifically addressed Laurie's claim, and stated:

> Wife's counsel introduced evidence attempting to show that husband had not accounted for some large sums of cash, with the basis in the testimony being the

7

> parties taxable income for two years.  The evidence is purely speculative, in that other than the tax returns showing income in one year and a loss in another, there was no evidence to show the cash related to that income ever was or still is in existence.

Laurie contends that the District Court's finding is clearly erroneous.

¶22 Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court's review of the record persuades it that a mistake has been made.  *In re T.B.*, 1999 MT 174, ¶ 12, 295 Mont. 234, ¶ 12, 983 P.2d 929, ¶ 12.  Laurie asserts that the District Court misapprehended the effect of the evidence, and erroneously based its finding on the DeBuffs' 1996 and 1997 tax returns instead of on the disparity between income and expenses reflected in Harold's handwritten notes.

¶23 The record reflects that the District Court was quite confused about the basis for Laurie's claim and about how the $120,000 amount was arrived at.  However, the District Court was equally intent on understanding the basis for Laurie's claim.  While Laurie's accountant testified, the District Court listened to all the evidence relating to the claim, reviewed the relevant trial testimony from the original trial, reviewed Harold's handwritten notes, and asked clarifying questions of Laurie's counsel when confused.  Following those efforts, the District Court found that Laurie's claim was "purely speculative" based on a lack of evidence to substantiate the claim.  After review of the record, we conclude that the District Court's finding was not clearly erroneous.  Although Harold's handwritten notes do reflect that income exceeded

8

expenses by approximately $120,000 in 1997, the notes neither directly correspond to the DeBuffs' gross income reflected on their 1997 tax return, nor are they corroborated with any other type of record, i.e., bank records. The District Court's finding that the existence of the alleged $120,000 had not been proven was a reasonable interpretation of the evidence.

¶24 Therefore, the correct amount of the marital estate in this case is $525,602. Following remand, the District Court was next instructed to equitably divide the marital estate in accordance with the statutory criteria set forth in § 40-4-202, MCA. In the original distribution of the marital estate, the District Court awarded Laurie $346,513 (approximately 51%) and Harold $334,439 (approximately 49%). Laurie contends that the District Court, at a minimum, should have awarded her the same 51% apportionment she received in the original distribution. However, after it redetermined the marital estate, the District Court also reapportioned the estate, and opted to divide it equally.

¶25 In its Order, the District Court erroneously calculated an equal division of the marital estate when it stated "this leaves a revised marital estate of $525,422, with an equal division of that amount being $267,711." One half of $525,422 is $262,711, not $267,711. However, as stated above, the District Court also incorrectly stated the tax liability. After substituting the correct amount, we conclude that the revised marital estate is $525,602, and an equal division of that amount is $262,801.

¶26 The District Court then went on to state:

> To equalize the estates, recognizing that the property had been previously divided, the husband will have to pay to wife the sum of $66,728. This sum represents the reimbursement required to equalize the estate after wife paid the income tax consequences and sale expenses.

The District Court's Order does not explain exactly how it arrived at the $66,728 figure. However, if Laurie received an original award of $346,513, and paid $155,350 for tax liability and liquidation costs, then Laurie has actually received only $191,163 to date. Using the District Court's figures, the difference between what Laurie received and one-half the revised marital estate would have been $76,548. Employing the revised figures, Laurie is entitled to an award of $71,638 (the difference between the amount Laurie has received, $191,163, and her share of the marital estate, $262,801). If the District Court's calculation was based on other considerations, they were not identified in its Order. Therefore, we conclude that the District Court's redetermination and redistribution of the marital estate, based on math alone, is clearly erroneous.

¶27 To accomplish an equal division of the marital estate, Laurie is entitled to an additional payment of $71,638. However, Laurie claims that the District Court's division of the marital estate was inequitable for two additional reasons. First, Laurie asserts that there was no basis for the District Court to reduce her apportionment of the marital estate from 51% to 50%, which resulted in a $12,000 reduction in her share of the estate. Second, Laurie contends that the District Court failed to properly weigh all

10

factors listed in § 40-4-202, MCA, which resulted in an inequitable distribution.

¶28 As to the reduction in Laurie's apportionment of the estate, the District Court provided a basis for its decision:

> Previously this court entered a disproportionate division of property to reflect an estimate at disposition and tax costs, but those costs have been determined and reflected in the property division. . . . No reason exists to award either party a disproportionate property division or an award of maintenance.

When the District Court determined the fixed amount of liabilities, it reapportioned the estate and divided it equally. Laurie contends that the District Court's rationale for reducing her portion of the marital estate contradicts an earlier order of the Court issued orally on March 31, 1998, and that the reduction was simply punishment for her appeal of the case. At the March 31, 1998, hearing, the District Court stated:

> Since I have awarded the wife more than half of the property I think in my mind that kind of covers a chunk of the attorney's fees, *and that's part of the reason for the inequitable settlement*. I didn't come up with an exact number, come up with a number of cash from one of you to the other, so I am going to just direct each party to pay their own attorney's fees.
>
> Another reason behind that is I have watched interaction between the parties here. Neither party has bent over backwards to try to get along with the other one. The attorneys have some, but neither party really has, so you guys fought your own fight. You get to pay for your own fight. [Emphasis added.]

While attorney fees may have been part of the reason for the inequitable distribution, it was not the only reason, and we conclude that the District Court's rationale in its November 28, 2000, Order was a reasonable exercise of its discretion. Once the

11

liabilities were determined, the District Court had the discretion to reduce the apportionment of the estate to effect an equitable distribution in accordance with § 40-4-202, MCA. We have found nothing in the record to show that the District Court abused its discretion. Therefore, the District Court did not err.

¶29 Finally, Laurie contends that the District Court failed to properly consider certain criteria enumerated in § 40-4-202, MCA, most notably the parties' respective abilities to generate future income and the fact she was not awarded maintenance. Laurie contends that she should have received sixty percent of the marital estate as her equitable share.

¶30 Section 40-4-202(1), MCA, provides in pertinent part:

In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

¶31 On remand, we instructed the District Court to justify its findings based on the statutory criteria in § 40-4-202, MCA. The

12

District Court complied with our instruction. In the November 28, 2000, Order, it stated:

> The Supreme Court wanted the statutory criteria for division of marital property in Section 40-4-202 addressed. The parties were married just shy of 20 years, all of their adult lives. Both enjoy reasonably good health. Husband has job skills in the farming and construction industry, and wife has some vo-tech education, substitute experience at schools, some sawmill laborer experience, and grocery clerk experience. Husband's construction skills earned him about $14,000 per year, wife's skills earned her about $12,000 per year. Neither party has extraordinary needs. Husband is primary custodian of the parties minor children. The parties had no substantial pre-marital property, or gifts or bequests during the marriage. The parties acquired substantially all of their property during the marriage. When wife was a homemaker she facilitated the maintenance of the parties property. . . . Although the values for the property division are equal, the husband has received as his property the majority of the debt carrying property, including the home with a substantial debt, and the land debt. He has the farmland, but no operating capital, no machinery, and now a debt to wife for his share of the liquidation and tax costs. Wife has received property suitable for liquidation, less the costs of liquidation, and therefore will be in a position to invest the proceeds of the liquidation to supplement her income. No reason exists to award either party a disproportionate property division or an award of maintenance.

¶32 As we stated in *DeBuff I*, a district court need not articulate each factor set forth at § 40-4-202, MCA, separately, so long as the findings are sufficient to allow nonspeculative review by this Court. *Citing In re Marriage of Gerhart* (1990), 245 Mont. 279, 282, 800 P.2d 698, 700-01. The test for the adequacy of the findings of fact is "whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." *Gerhart*,

13

245 Mont. at 282, 800 P.2d at 701 (*citing In re Marriage of Jensen* (1981), 193 Mont. 247, 253, 631 P.2d 700, 703).

¶33 Here, we conclude that the District Court's distribution of the marital estate was supported by the record. The District Court provided findings of fact which specifically included the statutory criteria enumerated in § 40-4-202, MCA. The District Court considered the status of the parties, their job skills, their relative positions based on the division of the marital estate, and found that an equal distribution of the estate was in this case equitable. After review of both the District Court's reasoning as well as the evidence in the record, we conclude the District Court did not err.

¶34 Accordingly, based on the tax liability and liquidation costs excluded in the original marital estate, Laurie is entitled to an additional $71,638, plus interest as discussed below.

ISSUE 2

¶35 Did the District Court correctly determine the prejudgment and postjudgment interest to which Laurie was entitled?

¶36 Laurie contends that the District Court erred when it determined the amount of interest to which she was entitled. Specifically, Laurie contends that pursuant to our decision in *In re Marriage of Pospisil*, 2000 MT 132, 299 Mont. 527, 1 P.3d 364, she is entitled to interest at the rate of 10% from the time judgment was entered and that the 10% interest rate should run from the time the District Court issued its verbal order on March 31, 1998. In *Pospisil*, we held:

14

> Judgment interest is not "awarded." Rather, judgment interest is a statutory right. Under § 25-9-205, MCA, interest is payable on all judgments recovered at the annual rate of ten percent. Under Rule 54(a), M.R.Civ.P., a "judgment" expressly includes a decree and any order from which an appeal lies. Once a person is liable for a money judgment resulting from a property settlement and payment is not made, the person entitled to the settlement is further entitled to the statutory rate of interest. [Citations omitted.] Further, under Rule 31, M.R.App.P., "[i]f a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest."

*Pospisil*, ¶ 49.

¶37 Harold, on the other hand, contends that Laurie is not entitled to postjudgment interest from the date of the original decree based on this Court's decision in *Marriage of Pfeifer*, 2000 MT 100, 299 Mont. 268, 999 P.2d 340. In *Pfeifer*, we held that a spouse is not entitled to interest on an original award where that award on appeal has not been affirmed. ¶ 18.

¶38 However, *Pfeifer* is factually distinguishable and neither party has accurately characterized what the District Court actually did. The District Court, in its November 28, 2000, Order stated:

> This sum [$66,728] represents the reimbursement required to equalize the marital estate after wife paid the income tax consequences and sale expenses. The sale expenses had no fixed date, the income tax liability would have become concrete on April 15, 1999. Therefore wife should receive interest on that sum from April 15, 2000. A reasonable amount of interest, given this courts familiarity with current lower interest rates, would be 7%.

At the conclusion of the Order, the District Court stated:

> WHEREFORE, IT IS HEREBY ORDERED that Husband pay to Wife the sum of $66,728, with such sum to bear interest at the rate of 7% from April 15, 2000. Husband is given until January 30, 2001, to make this payment. On January

15

31, 2001, the interest rate is to increase to the legal rate on Judgments.

There was not a money judgment for which statutory interest was owed as a result of the 1998 decree. The first money judgment resulted from the District Court's Order dated November 28, 2000, and the monetary amount was not due by the terms of that Order until January 30, 2001. Therefore, the District Court correctly concluded that statutory interest on the judgment was due from January 31, 2001, forward. Section 25-9-205, MCA, provides:

> **Amount of interest.** (1) Except as provided in subsection (2), interest is payable on judgments recovered in the courts of this state at the rate of 10% per annum and no greater rate. Such interest must not be compounded in any manner or form.
> (2) Interest on a judgment recovered in the courts of this state involving a contractual obligation that specifies an interest rate must be paid at the rate specified in the contractual obligation.

Therefore, from January 31, 2001, Laurie was owed postjudgment interest from Harold on the amount owed her at the rate of 10% per annum.

¶39 Although not referred to as such, by either party or the District Court, the interest awarded to Laurie at the rate of 7% was, in reality, prejudgment interest, presumably awarded pursuant to § 27-1-211, MCA. That statute provides:

> **Right to interest.** Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

¶40 Although the rate of postjudgment interest is provided by statute, there is no comparable provision for the rate of

16

prejudgment interest. Therefore, the District Court understandably used its discretion to arrive at a reasonable rate. However, failure to provide guidance to district courts for future awards of prejudgment interest will lead to inconsistent and unpredictable results. That would not be in the best interest of parties trying to anticipate their rights or obligations in an effort to avoid litigation. Therefore, in this case and in the future, we conclude that the appropriate rate for prejudgment interest when it is awarded should be the same as that rate awarded for postjudgment interest.

¶41 Neither party has provided guidance to this Court regarding the appropriate rate for prejudgment interest. However, the public policy established by the Legislature is apparent through the only two statutes which establish interest rates and which have been applied in the context of litigation. Section 25-9-205, MCA, already discussed, establishes the postjudgment interest rate at 10% per annum unless there is a contractual obligation which states otherwise. Section 31-1-106, MCA (found in Title 31, Credit Transactions and Relationships), also provides for a 10% rate of interest where a rate is not otherwise provided by contract on written instruments, accounts stated, and money lent or detained. We have in the past relied on § 31-1-106, MCA, in the context of prejudgment interest. *See Frank L. Pirtz Constr. v. Hardin Town Pump, Inc.* (1984), 214 Mont. 131, 142, 692 P.2d 460, 466; *Ehly v. Cady* (1984), 212 Mont. 82, 98-99, 687 P.2d 687, 696. However, those cases involved contract actions which are specifically

17

provided for by the terms of the statute. This case does not involve any of the circumstances specifically referred to in § 31-1-106, MCA.

¶42 Where the legislature has provided for interest but failed to provide the rate, the general rule is stated at 45 Am. Jur.2d, *Interest and Usury* § 48 (1999), which states:

> Many states have statutes regulating the rate of interest receivable for the use of money, and, assuming their validity, such provisions are controlling.
> Subject to such statutory provisions, the parties may, by contract, fix the rate of interest to be charged. *In the absence of a governing statute, a court of equity may exercise discretion as to the allowance of interest, depending on the circumstances of the case, but equity generally follows the rules of law governing the allowance of interest, and if the subject is regulated by statute, the court must follow the statute and may not exercise discretion as to the rate to be allowed.* [Emphasis added.]

¶43 At our effort to implement the intent of the Legislature by permitting prejudgment interest when the statutory criteria is satisfied and provide interest at a rate which the Legislature would consider reasonable, we conclude that the most appropriate rate for prejudgment interest pursuant to § 27-1-211, MCA, is the same rate provided for postjudgment interest pursuant to § 25-9-205, MCA.

¶44 The question here is when was prejudgment interest due. Laurie contends that the costs of liquidation were incurred in 1998 and the tax liability by April 15, 1999. The District Court found no date had been established for liquidation costs, that the tax liability accrued on April 15, 1999, and awarded prejudgment interest from April 15, 2000. After reviewing the record, we

18

conclude that the District Court correctly found that no date had been established for liquidation costs. However, if the tax liability was incurred by April 15, 1999, the property was liquidated sometime prior to that date and subsequent to May 13, 1998. We are unable to establish a more precise date because of a failure of the parties to do so. Therefore, we conclude that prejudgment interest, pursuant to § 27-1-211, MCA, was due from April 15, 1999. The District Court's Order regarding interest is otherwise affirmed.

ISSUE 3

¶45 Did the District Court err by not considering the tax consequences to Harold which would result from the redistribution of the marital estate?

¶46 The District Court's redistribution of the marital estate resulted in a monetary obligation from Harold to Laurie in lieu of the tax liability and liquidation costs she incurred. Harold contends that the District Court failed to take into account the resulting tax liability he would incur in order to pay that amount to Laurie. According to Harold, because he was left with only debt-burdened assets, he will be forced to liquidate property and, in turn, will incur a similar tax liability. Therefore, Harold maintains that the District Court erred when it failed to take into account his tax consequences.

¶47 We have previously held that a district court abuses its discretion when it fails to address tax consequences associated with the distribution of a marital estate. *In re Marriage of Lee*

19

(1991), 249 Mont. 516, 519-20, 816 P.2d 1076, 1078.  We have stated "where a property distribution ordered by a court includes a taxable event precipitating a concrete and immediate tax liability, such tax liability should be considered by the court before entering its final judgment."  *Lee*, 249 Mont. at 519, 816 P.2d at 1078 (*quoting In re Marriage of Beck* (1981), 193 Mont. 166, 171, 631 P.2d 282, 285).

¶48  Therefore, we must determine whether the District Court ordered Harold to engage in a taxable event precipitating a concrete and immediate tax liability.  We conclude that it did not.  The District Court did not order Harold to sell any of his property in order to pay Laurie the cash settlement now owed.  Harold's situation is different than Laurie's following the original distribution.  In *DeBuff I*, we held that because Laurie had already moved off the farm, was employed as a grocery store clerk, and was given only three weeks to remove her property from the farm, it was reasonable to conclude that Laurie did not intend to either use or rent the equipment and, therefore, would have to sell it.  ¶ 24.  For that reason, we concluded that an immediate and concrete tax liability would result.

¶49  Here, Harold simply raises the possibility that if he liquidates any of his holdings, he will incur a tax liability as a result.  However, the District Court did not order Harold to liquidate any of his property.  While the sale of land is one possible option, Harold agreed that he has a variety of other options available to him to satisfy his obligation to Laurie.

20

Several of those options, such as a payment plan over time or taking out a personal loan, would not result in any tax liability. Because the District Court did not order Harold to do something which will result in a concrete and immediate tax liability, we conclude the District Court did not err.

¶50 Accordingly, we affirm in part and reverse in part the judgment of the District Court. We affirm the District Court's inclusion of the tax liability and liquidation costs incurred by Laurie in the marital estate. However, we adjust the amount of her award based on corrected calculations. Furthermore, we affirm the District Court's division of the estate based on the statutory criteria in § 40-4-202, MCA. However, we reverse the District Court's award of prejudgment interest. Laurie is entitled to prejudgment interest at the rate of 10% per annum from April 15, 1999. Finally, we conclude that the District Court did not err by declining to adjust the marital estate to account for Harold's alleged tax consequences and we remand to the District Court for entry of judgment consistent with this Opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART