No. 02-085

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 66N

IN RE THE MARRIAGE OF

DARREL SELMER JOHNSON,

        Petitioner and Respondent,

   and

KIMBERLY ANN JOHNSON,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 2000-0388,
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Vernon E. Woodward, Hendrickson, Everson, Noennig and Woodward,
Billings, Montana

        For Respondent:

            Mark D. Parker, Attorney at Law, Billings, Montana

Submitted on Briefs:  November 14, 2002

Decided:  April 1, 2003

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2     Kim Johnson appeals from the Restated/Amended Findings of Fact and Decree of Dissolution of Marriage issued by the Thirteenth Judicial District Court, Yellowstone County.  We affirm in part and remand.

¶3     The following issues are raised on appeal:

¶4     (1) Whether the District Court abused its discretion by failing to correctly apply its own finding that Kim is entitled to an equitable share of marital property;

¶5     (2) Whether the District Court erred in its calculation of spousal maintenance;

¶6     (3) Whether the District Court erred when it concluded that Kim will probably be employable after undergoing several surgeries within the next three years;

¶7     (4) Whether the District Court erred when it declined to reopen the matter to receive evidence concerning assets not disclosed before trial, specifically the proceeds resulting from the demutualization of a stock fund; and

¶8     (5) Whether Darrel failed to comply with the District Court's judgment, awarding Kim an investment account, when he transferred only a portion of that account to Kim rather than the entire account according to its current value.

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶9      Darrel and Kim Johnson were married in 1977. Throughout the marriage, Darrel was employed as an insurance agent by Johnson Insurance Co. Kim has worked as a substitute teacher, clerical worker, small business owner, and day-trader. Darrel and Kim separated in 2000, and have lived apart since that time. Darrel and Kim have a 14-year-old son, Darin. Kim is Darin's primary caretaker and, under the current placement and visitation schedule, Darin sees his father on weekends.

¶10     On April 6, 2000, Darrel filed a Petition for Dissolution. Trial was held in September, after which the District Court entered its findings of fact and decree of dissolution of marriage. Kim filed a motion to amend the judgment, and following a hearing on the motion, the District Court entered restated findings. Subsequently, Kim filed a Rule 60(b)(3), M.R.Civ.P., motion for relief from the judgment. No ruling was entered, and the motion was deemed denied. Kim then appealed.

¶11     Shortly after their marriage, Kim was diagnosed with rheumatoid arthritis, and has since undergone several surgeries on her hands, feet, and legs. In 1996, Kim suffered a severe traumatic brain injury as a result of a one-vehicle rollover accident. Kim's injuries required extensive surgery, and she now has a fused knee and a rod from her ankle to hip that restricts movement in her leg. She also has nerve damage in her left arm and hand, significant difficulties with short term memory, anxiety, depression, a thyroid condition, and an overactive bladder. She has been diagnosed with Sjogrens Syndrome, and requires

3

constant eye lubrication. At the time of trial in the present matter, the monthly cost for Kim's medication was approximately $1,800.

¶12 Due to the progression of her arthritis and the effects of her injuries, Kim is likely to require surgery for replacement of both ankles. In addition, she will require hip and knee replacements. When the District Court issued its findings of fact, the estimated costs of these procedures and the resulting hospitalization was $115,000. Without surgery, Kim will likely be confined to a wheelchair. Kim's COBRA insurance is available for a three-year period following the dissolution of her marriage. The current cost of this insurance is $230 per month. When the insurance expires, Kim may be eligible to participate in an existing state program that insures people who are uninsurable by other insurance companies. The cost of this insurance is $324 per month.

¶13 Currently, Kim is unable to work full-time or support herself. In its judgment, the District Court concluded that if the contemplated surgeries take place, Kim might be able to work enough to supplement her income in the future to the extent of a few hundred dollars each month.

DISCUSSION

¶14 In general terms, Kim argues that the District Court erroneously failed to apply its own finding that she should receive a disproportionately high share of the marital property. She contends that, in dividing the property, the District Court disregarded the disparity in the parties' liabilities, health, employability, and future earning potential. In support of this argument, Kim makes the following assertions: (1) that the District Court's calculation of

4

spousal maintenance does not account for Kim's medical expenses, and deprives her of sufficient funds to meet her needs; and (2) that the District Court erred when it concluded that Kim is employable, and that she can undergo several surgeries within the next three years. Kim also argues that the District Court erred when it declined to reopen the matter to receive evidence concerning assets not disclosed before trial, specifically the proceeds resulting from the demutualization of a stock fund. In addition, Kim states that Darrel failed to comply with the District Court's judgment by refusing to transfer the full amount of an investment account to Kim as ordered by the court.

¶15 In response, Darrel argues that, pursuant to § 40-4-202, MCA, the District Court equitably distributed the marital property, and that Kim's failure to provide any credible testimony concerning marital liabilities precludes a finding that the distribution was invalid. Darrel further asserts that the spousal maintenance award of $1,000 per month adequately provides for Kim's reasonable living expenses since Kim will have the ability to work in the future. Darrel also contends that because the issue of the demutualized stock fund was testified to during trial and a matter of public knowledge, the District Court properly denied Kim's post-judgment request for relief.

¶16 The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA, under which a trial court is vested with broad discretion to distribute the marital property in a manner which is equitable to both parties. *See Marriage of Lee* (1997), 282 Mont. 410, 421, 938 P.2d 650, 657. When dividing marital property, the trial court must reach an equitable distribution, not necessarily an equal distribution. *See Marriage of Walls*

5

(1996), 278 Mont. 413, 416, 925 P.2d 483, 485. We review a trial court's division of marital property to determine whether the findings on which the court relied are clearly erroneous. *See Marriage of DeBuff*, 2002 MT 159, ¶ 14, 310 Mont. 382, ¶ 14, 50 P.3d 1070, ¶14; *Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. If the findings are not clearly erroneous, we will affirm the distribution of property unless the trial court abused its discretion. *See DeBuff*, ¶ 14. The standard of review for an abuse of discretion in a dissolution proceeding is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *See Engen*, ¶ 26. Pursuant to this standard of review, we examine each of Kim's arguments in turn.

Issue One

¶17 We first address Kim's argument that the District Court abused its discretion by failing to correctly apply its own finding that she should receive a disproportionately high share of the marital property. In its findings of fact, the District Court offered the following premise for its judgment, stating:

> In light of the fact that this is a marriage of long duration (over 20 years), that the wealth of the parties was accumulated during the course of the marriage, that Darrel is employed and able to continue his employment, that Kim is unable to be employed in the future, that Kim has serious medical problems and will incur substantial ongoing medical expenses, the Court finds that it is equitable and proper to order a disproportionate division of the marital estate.

¶18 Kim maintains that several of the District Court's findings violate this general objective. She contends that the District Court's attempt to equally divide assets and

6

liabilities was "mathematically flawed." The District Court determined that of the $14,000 in marital liabilities, some were paid in full or in part by Darrel, while some had not yet been incurred and were associated primarily with Kim. The court further determined that the remainder of these liabilities, in the approximate amount of $2,000, was Kim's responsibility. However, Kim asserts that, in calculating this amount, the District Court failed to acknowledge the lack of testimony supporting its finding that Darrel had paid certain liabilities–specifically, bills for home repairs. She also urges that the court failed to include this debt allocation as a liability in its calculations. Kim suggests that the court, therefore, attributed more liabilities to her than it should have. Kim also suggests that the District Court failed to consider her future medical expenses and deductibles not covered by insurance. She notes that even with insurance, she will owe "a substantial amount" for the projected surgeries, and that the funds for these expenses will, necessarily, come from her investment portfolio, thereby reducing her income. Finally, Kim asserts that to pay her attorney fees, she will have to liquidate $15,000 of her investment accounts and, as a result, reduce the principal of those accounts in order to generate a sufficient annual income.

¶19   Kim's arguments do not support a determination that the District Court acted arbitrarily, without employment of conscientious judgment, or that the court exceeded the bounds of reason resulting in substantial injustice. With regard to the District Court's apportionment of marital liabilities, Kim has not established that the court improperly allocated those liabilities to the parties. Although Kim continues to assert that Darrel has not paid for needed home repairs, she offers no evidence showing that the cost of those repairs

7

constitutes an outstanding liability to her. The District Court determined that because the cost of repairs has not been incurred and might not be incurred, the cost cannot be characterized as an outstanding liability. The total value assigned to the home by the District Court represented its value without repairs, or $136,550. The court listed the home as an asset to Kim and noted that insurance proceeds were deposited in an account for Kim to utilize for repair purposes. Furthermore, the District Court did not err or abuse its discretion by not including Kim's $2,000 in liabilities in its valuation of the marital property when the court likewise did not include the individual liabilities incurred by Darrel.

¶20　Neither has Kim established that the District Court was required to estimate the total amount of her future out-of-pocket medical expenses or characterize those expenses as debt to be factored into the marital liabilities. Rather, the court's findings and conclusions suggest that the court carefully considered Kim's projected medical expenses and incorporated those amounts into its valuation of the marital property when appropriate. The same may be said with regard to Kim's attorney fees. Our analysis of whether an award of attorney fees is necessary involves consideration of the requesting party's inability to pay his or her attorney fees, the other party's ability to pay attorney fees, and the relative financial position of both parties. *See In re Marriage of Schmiedling*, 2000 MT 237, ¶¶ 27-31, 301 Mont. 336, ¶¶ 27-31, 9 P.3d 52, ¶¶ 27-31. Kim, however, does not address these factors. Kim has not asserted that she is unable to pay her own attorney fees, or that Darrel is better suited, financially, to pay those expenses. Kim states only that she will have to pay the attorney fees from certain investment accounts and, thereby, reduce her annual income.

8

¶21 In effect, Kim is asking this Court to characterize her potential future expenses as debt and to attribute that debt to her as a liability. Kim offers no authority for this proposition, and has not satisfied her obligation of showing that the District Court erred in its valuation of marital liabilities or its treatment of future medical expenses and attorney fees. Therefore, we conclude that the District Court did not abuse its discretion.

Issue Two

¶22 We next consider the issue of whether the District Court erred in its calculation of spousal maintenance. The District Court concluded that Kim will be unable to support herself even with a disproportionate distribution of assets, and ordered Darrel to pay Kim $1,000 per month as maintenance. The court further ordered that maintenance will increase to $1,300 per month when Darrel's child support obligations end. Kim argues that this amount falls "far short of the amount the [c]ourt determined was necessary for Kim to meet her monthly living expenses." Specifically, she contends that the court failed to take into account her future medical expenses as well as her projected tax liabilities.

¶23 A trial court may award maintenance after the marital property has been equitably divided. An award of maintenance is dependent upon a finding by the trial court that the recipient spouse is unable to support herself through appropriate employment. The court must consider the spouse's financial resources, her ability to meet her needs independently, the time necessary to acquire sufficient education or training to become employable, and the standard of living established during the marriage. *See In re Marriage of Bee*, 2002 MT 49, ¶ 28, 309 Mont. 34, ¶ 28, 43 P.3d 903, ¶ 28.

¶24    In the present case, Kim's general argument, that her maintenance will not meet her monthly living expenses, is insufficient to support a determination that the District Court's maintenance calculation was clearly erroneous.  The District Court's findings of fact and conclusions of law indicate that, in calculating the maintenance amount, the court considered Kim's reasonable living expenses, Darrel's reasonable living expenses, Kim's ability to maintain employment, and Darrel's ability to support himself while paying maintenance.  In its findings, the court noted that Kim could not be expected to meet her needs without the assistance of maintenance given that Kim is currently unable to work full-time or support herself, and because the property distribution, alone, would be insufficient as a source of monthly income.  The court also observed that because of the divorce, Darrel's income has decreased.  Thus, having considered the financial status of both parties, as well as Kim's additional sources of income, the court determined that only a combination of maintenance and investments would yield sufficient funds to meet her needs.  In short, contrary to Kim's assertions, it appears that the District Court thoroughly considered the relevant factors when calculating maintenance.

¶25    Kim's argument that her future tax liability warranted a higher maintenance award is also unpersuasive.  She offers no authority to support the proposition that a trial court is required to consider a recipient spouse's future tax liability when calculating maintenance.  In fact, we have stated in past decisions that a trial court is not required to consider tax liability unless the taxable event is precipitated by a court order.  *See In re Marriage of Beck* (1981), 193 Mont. 166, 171, 631 P.2d 282, 285.  Here, Kim's projected tax consequences

will not stem from a particular court-ordered event, but rather from various potential sources of income that Kim intends to exploit. Therefore, we conclude that the District Court did not err in its calculation of maintenance.

Issue Three

¶26 Kim also argues that the District Court erred when it concluded that she will probably be employable after undergoing several surgeries during the next three years. In its findings of fact, the District Court noted that Kim "could probably, after various contemplated surgeries, work enough to supplement her income to the extent of a few hundred dollars a month." According to Kim, this conclusion is not supported by the evidence. Kim maintains that any assessment of her future employability requires excessive speculation given that she anticipates undergoing surgeries, is currently lacking in job skills, and will not receive job training. Kim states that because the court's conclusions as to her employability are incorrect, the court's calculation of maintenance was improperly skewed.

¶27 Kim also argues that the record does not support the District Court's conclusion that she should undergo her surgeries within the next three years. She cites testimony indicating that her doctors are reluctant to perform surgery until absolutely necessary because of her propensity toward infection. Kim maintains that because her surgeries are a last resort, the District Court's determination that these procedures will be completed in an expedient fashion within the next three years is unfounded.

¶28 Kim's arguments, on both grounds, are unpersuasive. Kim's own testimony supports the District Court's conclusion that she will be employable. Kim testified about her health

11

and mobility, stating that she is able to clean her house and work in her garden. Kim stated that she can complete such tasks as clearing moss out of a pump that feeds water into her garden from a nearby ditch. Kim attributes her improved state of health to medication that has alleviated the more debilitating symptoms of her rheumatoid arthritis. When asked what she has done to find a job, Kim testified that she has not actively pursued employment, and has not been in a position in which employment is necessary. Kim's statements were confirmed by Darrel, who testified that Kim has taken care of her yard and flower garden and continues to engage in day-trading. Darrel also stated that, in his opinion, Kim's condition is such that she could resume any of her old jobs, including selling home furnishings, or working at a school. This testimony contradicts Kim's assertions that the District Court engaged in improper speculation.

## Issue Four

¶29   We next address the issue of whether the District Court erred when it denied Kim's Motion for Relief from Judgment or Order pursuant to Rule 60(b)(3), M.R.Civ.P. After the District Court entered its Restated and Amended Findings of Fact and Decree of Dissolution of Marriage, Kim learned that various insurance policies that she and Darrel owned had increased in value due to an upcoming distribution of stocks resulting from the demutualization of their insurance company. Although Darrel disclosed ownership of the accounts, he neglected to disclose an annuity worth approximately $700 resulting from the demutualization. In response, Kim filed a Rule 60 motion for relief from judgment,

12

requesting that the Court hear testimony regarding the additional value of the policies. The District Court did not issue a decision within sixty days, and the motion was deemed denied.

¶30    Kim cites § 40-4-253, MCA, for the proposition that a party's failure to disclose assets is presumed to be grounds for the trial court to award the undisclosed assets to the opposing party. Kim contends that the increase in value was a new asset that vested upon the insurance company's demutualization vote prior to trial rather than after trial when the proceeds of the demutualization were distributed. On this basis, Kim requests that we award the annuity to her or, in the alternative, remand the matter and direct the District Court to hear testimony regarding the account. In response, Darrel argues that because the demutualization of the insurance company was a matter of public knowledge, and since the distribution of proceeds occurred after trial, he was not obligated to disclose the annuity in his final disclosure statement. Darrel also notes that he has since transferred the annuity to Kim, and asserts that the issue is, therefore, moot.

¶31    Regardless of whether Darrel was obligated to disclose the $700 annuity or whether that obligation arose prior to, during, or after trial, the fact that he subsequently transferred the annuity to Kim appears to render her request moot. In her reply brief, Kim does not address Darrel's assertion, and assuming that Kim has, in fact, received the annuity, it is unclear why she would request that this Court distribute those proceeds to her or, in the alternative, remand the matter to the District Court for consideration of the issue. In her brief, Kim fails to specify whether she is entitled to $700 or, generally, the increased value in the policies. Assuming that Kim has raised a valid question as to whether she is entitled

13

to the demutualization proceeds, we remand this issue to the District Court for further consideration. We instruct the court to decide whether Darrel is obligated to compensate Kim for the increase in value of the insurance account, and to determine what effect, if any, Darrel's transfer of $700 to Kim will have on that obligation.

Issue Five

¶32　Finally, we consider Kim's request for the remainder of an investment account, which was originally valued at $124,650, but which increased in value between the time of trial and the issuance of the District Court's judgment. In ordering Darrel to transfer the account to Kim, the District Court identified the account by its pre-increase value of $124,650, and declined (or neglected) to adjust the award to comport with the increase in the value of the account. Kim argues that the court's failure to identify the account by its later value does not indicate an intention to limit the amount to which Kim is entitled. She asserts that if the court had intended to limit the amount, it would have done so expressly. She concludes that Darrel has failed to comply with the District Court's judgment by not transferring the entire investment account to her according to the current value of the account.

¶33　Because the District Court has not had an opportunity to make specific findings as to whether Darrel properly complied with the court's order, we instruct the court, on remand, to determine whether Kim is entitled to the entire investment account according to its current value, and whether Darrel has fully complied with the court's judgment.

CONCLUSION

¶34    In summary, we affirm the District Court with respect to its division of the marital estate and its calculation of spousal maintenance.  In addition, we remand this case for further consideration of the demutualization and investment account questions.


                                                            /S/ W. WILLIAM LEAPHART


We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE