FILED

06/21/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0504



DA 15-0504

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 154

IN RE THE MARRIAGE OF:

STEPHANIE G. HEALY,

       Petitioner and Appellee,

   v.

JOHN P. HEALY,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DR 02-101
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Patrick T. Fleming, Esq., Fleming & O'Leary, PLLP, Butte, Montana

      For Appellee:

          C. Kathleen McBride, Corette Black Carlson & Mickelson, P.C., Butte, Montana

          Peggy Probasco, Special Assistant Attorney General, Child Support Enforcement Division, Butte, Montana

          Submitted on Briefs: March 16, 2016

                  Decided: June 21, 2016

Filed:

            _____
                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Stephanie Healy filed for dissolution of her four-year marriage with John Healy in July 2002. Following a November 2003 dissolution hearing, the Second Judicial District Court approved a stipulated Final Parenting Plan and Property Settlement Agreement. As part of the Agreement, John paid $600 per month in child support for the couple's two minor children. In November 2013, Stephanie requested modification of the child support arrangement. Following a hearing in November 2014, the District Court granted modification of the Agreement and increased John's child support to $2,048 per month. John appeals. We affirm in part and vacate and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Stephanie and John Healy were married in Butte, Montana, on September 26, 1998. A daughter was born in June 1999, and a son was born in November 2000. On July 10, 2002, Stephanie filed a petition for dissolution. The parties participated in a settlement conference on November 12, 2003, at the conclusion of which they entered into a Final Parenting Plan and Property Settlement Agreement (the Agreement). The Agreement was presented to and approved by the District Court.

¶3 The Agreement provided, in relevant part:

1. Stephanie and John would share parenting but Stephanie would be the primary custodial parent.

2. John would pay child support in the amount of $600/month ($300/child/month).

3. John would establish an irrevocable college trust account (College Trust) and deposit $1,000/year into the trust effective June 1, 2004.

2

4. Stephanie would deposit $300/year into the College Trust effective June 1, 2005.

5. John would provide health insurance for the children and both parents would divide any uninsured expenses.

¶4    Following the dissolution, John consistently made timely child support payments; however, he neglected to establish the College Trust. Rather, he deposited the mandated annual funds into his employment-related 401(k) plan for a period of time prior to transferring it to a segregated account at a federal credit union. Stephanie established two savings accounts in the children's names and deposited her annual contributions into those accounts.

¶5    During the marriage, John worked, and continues to work, as a transmission operator at NorthWestern Energy. Stephanie was, and continues to be, employed as an elementary school teacher at Butte Central Catholic School (BCCS). As a teacher, Stephanie's children may attend BCCS at a 50% discounted tuition. Upon reaching school age, the children began attending BCCS and John and Stephanie cooperatively paid the annual tuitions for the school. John paid approximately 60% and Stephanie paid the remainder. In 2008, after Stephanie remarried, she and John agreed that John would pay their daughter's school tuition and Stephanie would pay their son's. This practice continued until 2012 when their daughter got braces. John agreed to pay for the braces and Stephanie agreed to pay both tuitions for school year 2012/2013 with the understanding that the tuitions for the 2013/2014 school year would revert to the 50/50 arrangement and remain so thereafter.

¶6     In November 2013, Stephanie applied to the Department of Health and Human Services (DPHHS) Child Support Enforcement Division (CSED) for review and modification of the ten-year-old Agreement. In January 2014, after obtaining relevant information from both parties and applying the Montana Child Support Guidelines, CSED calculated a monthly child support amount of $571/child/month, for a total of $1,142/month. John was to begin making these payments in February 2014. CSED served the modification notice and order on Stephanie and John, informing them that they had 20 days in which to object to the new terms. If neither objected, the modification would be submitted to the district court for approval and would become final. Neither party objected within 20 days and on March 24, 2014, CSED filed its modification motion with the District Court.

¶7     On April 2, 2014, John filed an objection in District Court arguing that CSED used his 12-month salary to calculate his annual income but used only a 9-month salary for Stephanie. He asserted that some income should be imputed to Stephanie for the summer months. CSED defended its calculation asserting that Stephanie worked only 9 months/year and did not, and had not historically, earned income during the summer months so no imputation of additional income was required. CSED moved the District Court to adopt the modified child support order while John urged the court to reject it and remand the matter to CSED for recalculation. In accordance with § 40-5-277(8)(b), MCA, the District Court scheduled a hearing for May 30, 2014. This hearing was repeatedly continued before being held on November 17, 2014.

4

¶8 In June 2014, Stephanie learned that John had not paid their daughter's tuition for school year 2013/2014. Consequently, in July 2014, while the modification hearing was pending, Stephanie asked CSED to recalculate John's child support to include school tuition and submit a revised modification order for the court's approval. In August 2014, CSED submitted a revised modification order that included John's recalculated child support of $1,024/child/month, or a total of $2,048/month. John objected.

¶9 The District Court conducted a hearing on November 17, 2014. John initially argued that the court did not have jurisdiction over CSED's August 2014 proposed modification because that proposal had not been subject to the administrative process. The District Court concluded it had jurisdiction to hear all issues raised before it and commenced the hearing. Both John and Stephanie testified.

¶10 John challenged the salary upon which CSED based his child support obligation. While he acknowledged that the annual salary CSED relied upon was derived from his year-end or near-year-end employment pay stubs from 2010-2013, he explained that during those years as well as in 2014, he worked considerable overtime hours at double-pay. However, he claimed that NorthWestern intended to eliminate all overtime opportunities beginning in 2015. He argued that CSED should have calculated his child support obligation using his regular hourly wage multiplied by a maximum annual hours of 2,080. Stephanie testified that John had told her in 2003, when they were negotiating John's initial child support, that he would "probably not be getting any more overtime."

¶11 On April 16, 2015, the District Court issued its Findings of Fact, Conclusions of Law and Final Order (Final Order). The court found that the evidence presented

supported CSED's use of past earnings to calculate John's child support. The court stated that John's "assertions that he will not continue to earn overtime and that his wages would decrease in the future should not be considered by child support because they are speculative in nature." The District Court ordered John to pay child support in the amount of $2,048/month, retroactive to February 2014.

¶12 The District Court further concluded that John's failure to pay school tuition in accordance with the parties' past practices constituted a substantial change in circumstances which justified modification of the 2003 Agreement. The court determined that a modification addressing, among other things, school tuition was necessary, appropriate, and in the best interests of the children. Turning to the College Trust, the District Court ordered the parties to establish a 529 plan account for each minor child. John was ordered to deposit $17,531.18, constituting his annual $1,000 contribution from June 1, 2004 through June 1, 2013, with 10% interest per annum. Stephanie was ordered to deposit $4,481.23, constituting $300 per year plus 10% interest per annum. The parties were to make their respective deposits within 60 days of the date of the court's order.

¶13 John appeals.

**ISSUES**

¶14 The issues on appeal are:

¶15 Did the District Court have jurisdiction to decide the CSED motion when there was no showing of changed circumstances so as to make the existing child support obligation unconscionable?

6

¶16    Did the District Court misapprehend the evidence when it made findings with respect to John's future income potential?

¶17    Did the District Court err when it imposed a 10% interest penalty on the parents' required College Trust contributions?

## STANDARD OF REVIEW

¶18    We review a district court's findings of fact in parenting plans and child support orders to determine whether they are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re the Parenting of M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. We review a district court's conclusions of law to determine if they are correct. *M.C.*, ¶ 10.

¶19    Whether a party is entitled to post-judgment interest is a conclusion of law which we review de novo. *In re Marriage of Debuff*, 2002 MT 159, ¶ 15, 310 Mont. 382, 50 P.3d 1070.

## DISCUSSION

¶20    *Did the District Court have jurisdiction to decide the CSED motion when there was no showing of changed circumstances so as to make the existing child support obligation unconscionable?*

¶21    The District Court in its Final Order indicated its jurisdiction derived from § 40-4-208, MCA, addressing modification of child support, and § 40-4-219, MCA, addressing amendments to a parenting plan. Section 40-4-208, MCA, provides in relevant part:

(1) Except as otherwise provided in 40-4-201(6), a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification.

. . .

(2)(b) Except as provided in 40-4-251 through 40-4-258, whenever the decree proposed for modification contains provisions relating to . . . support, modification under subsection (1) may only be made:

(i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable;

(ii) upon written consent of the parties; or

(iii) upon application by [DPHHS], whenever [DPHHS] is providing services under Title IV-D of the federal Social Security Act. . . .

¶22 Section 40-4-219, MCA, provides, in relevant part, that the district court "may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child."

¶23 John argues that the District Court did not have jurisdiction to hear CSED's Motion to Approve Proposed Modification because Stephanie did not establish substantial and continuing changed circumstances that rendered the terms of the original Agreement unconscionable as required by § 40-4-208(2)(b)(i), MCA. In opposing CSED's assertion that the District Court has jurisdiction under § 40-4-208(2)(b)(iii), MCA, John maintains that neither he nor Stephanie have been receiving Title IV-D services, or any other services, from CSED.

¶24 CSED argues that the District Court gained jurisdiction over the matter under both sections of § 40-4-208, MCA. Under § 40-4-208(2)(b)(i), MCA, CSED recounts multiple changed circumstances between the parties including, but not limited to, the passage of

8

10 years, the admission of the children into a tuition school, the changes in tuition over the years, the changes in the salaries of the parties, and John's failure to pay the agreed-upon tuition. Under § 40-4-208(2)(b)(iii), MCA, CSED claims it was providing Title IV-D services to the couple.

¶25 Lastly, the agency claims that the court has jurisdiction under the statutory provisions of the administrative process set forth in § 40-5-201, *et seq.*, MCA. While Chapter 4 of Title 40 (cited above) addresses the court's role in the termination of marriage, child custody, and support, Chapter 5 of Title 40 addresses, among other things, the CSED's regulatory and administrative role in establishing and enforcing court-approved or agency-issued child support orders. CSED notes that Stephanie's application for modification was filed with CSED under § 40-5-272, MCA. As required by the statute, the agency reviewed the application to determine if it met the criteria for modification. The relevant sections of § 40-5-272, MCA, are:

> (1) Upon the application of the department, the obligor, or the obligee, a support order issued by a district court of this state . . . may be reviewed by the department to determine whether the support order should be modified in accordance with the guidelines.
>
> . . .
>
> (4) Criteria constituting sufficient grounds for review of a child support order include:
> (a) a substantial change in circumstances as defined by administrative rules; [or]
>
> . . .
>
> (c) a lapse of 36 months from the date that:
> (i) the order was entered. . . .

¶26 The CSED accepted review of the order under § 40-5-272(4)(c), MCA, based upon the 10-year lapse from the date the order was entered. Subsequently, and in

9

accordance with § 40-5-273, MCA, CSED requested information from both parties for the purpose of calculating child support in accordance with the Child Support Guidelines. CSED then served both parties with the proposed modification order, informing them that they had 20 days in which to request a hearing. When no timely request for hearing was filed, the administrative law judge signed the modification and CSED submitted it to the District Court for approval. Section 40-5-277, MCA.

¶27 Section 40-5-277(8)(a), MCA, mandates, with exceptions and alternatives inapplicable to this case, that the original district court that approved the initial child support order must also approve the modified order. Section 40-5-277(8)(c), MCA, instructs that the district court may adopt, modify, or reject an administrative modified child support order. It may also remand the modified order to CSED with instructions. CSED posits that the District Court undertook review of this case specifically under the mandate set forth in § 40-5-277, MCA.

¶28 As § 40-5-277(8)(c), MCA, mandates that a district court review a CSED-modified child support order, the District Court unequivocally had the authority to adjudicate the issues before it. The record indicates that the District Court considered and acknowledged changes in the circumstances of the parties and the passage of time resulting in the children reaching school age and attending a tuition-required school. The District Court fulfilled its obligation to review CSED's modification actions taken under § 40-5-272, MCA.

¶29 We therefore conclude the District Court had jurisdiction to decide the CSED motion under the authority granted by § 40-5-277, MCA.

¶30 *Did the District Court misapprehend the evidence when it made findings with respect to John's future income potential?*

¶31 John argues that the District Court ignored his direct and uncontradicted testimony that he would no longer be earning overtime wages. We see no evidence that the court ignored relevant evidence or misapprehended the effect of the evidence before it. Rather, the District Court was presented with substantial and reasonable evidence of John's actual earning power for the previous five years. Based upon John's documented earnings and other factors, CSED calculated John's child support obligation. Other than his oral testimony, John produced no evidence at the hearing to support his claim that his employer intended to eliminate all overtime opportunities beginning in 2015. Moreover, evidence was presented that in both 2003 and 2013 John stated he would no longer have overtime opportunities; however, he continued to earn substantial overtime pay subsequent to both such announcements. It is the District Court's function to determine "the credibility of the witnesses and the weight assigned to their respective testimony." *Tubaugh v. Jackson*, (*In re C.J.*), 2016 MT 93, ¶ 19, 383 Mont. 197, 369 P.3d 1028, citing *In re the Parenting of N.S.*, 2011 MT 98, ¶ 25, 360 Mont. 288, 253 P.3d 863. Our review of the record confirms that the District Court did not misapprehend the effect of the evidence or clearly make a mistake in adopting CSED's calculation of John's child support. The District Court's reliance on John's past pay stubs to establish his child support obligation was not clearly erroneous.

¶32 However, the District Court abused its discretion by requiring John to pay $2,048/month retroactively to February 2014. Section 40-4-208(1), MCA, expressly

11

states that increased child support payments may only be required "subsequent to actual notice . . . of the motion for modification." John received the notice of modification from CSED in mid-January 2014, in which he was informed that his child support may be increased to $1,142/month, and in accordance with Admin. R. M. 37.62.2119(5), would become effective in February 2014. John challenged the notice in District Court. Following numerous continuances to the scheduled hearing, and the discovery of new information, Stephanie requested a revision to her initial request for modification seeking the inclusion of school tuition into the calculation. CSED filed a Notice to Court on August 15, 2014, requesting the court's approval of a child support modification increasing John's monthly child support obligation to $2,048/month. In accordance with § 40-4-208(1), MCA, the District Court was authorized to impose child support of $1,142/month effective in February 2014 and collectible through August 2014. Based upon CSED's recalculation and re-notice in August 2014, the court was authorized to require a child support payment of $2,048/month beginning in September 2014. We therefore vacate the District Court's order requiring John to pay $2,048/month retroactive to February 2014 and remand for an amended order in accordance with this Opinion.

¶33   *Did the District Court err when it imposed a 10% interest penalty on the parents' required College Trust contributions?*

¶34   Section 25-9-205, MCA, provides a statutory right to post-judgment interest, stating, in relevant part: "(1) Except as provided in subsection (2), interest is payable on judgments recovered in the courts of this state and on the cost incurred to obtain or enforce a judgment at the rate of 10% per year. The interest may not be compounded."

This statute has been applied repeatedly in marital dissolution cases involving support and maintenance. In *In re Marriage of Gibson*, 206 Mont. 460, 671 P.2d 629 (1983), Husband agreed in the parties' settlement agreement to pay Wife $7,500 on a given date. When Husband failed to pay, Wife sought enforcement of the agreement. *Gibson*, 206 Mont. at 461-62, 671 P.2d at 630-31. On appeal, we held that Husband was liable for statutory interest under § 25-9-205, MCA, from the date payment was due through the date payment was made. *Gibson*, 206 Mont. at 467, 671 P.2d at 633. *See also In re Marriage of Pospisil*, 2000 MT 132, 299 Mont. 527, 1 P.3d 364. The District Court determined that under the 2003 Parenting Agreement both John and Stephanie were obligated to make annual deposits into the College Trust on specific dates. However, because the College Trust was not established, neither party made timely payments into it. As a consequence, the delinquent payments became a money judgment subject to the statutory interest established in § 25-9-205, MCA. The District Court correctly interpreted and applied that statute and did not err in requiring both parties to pay interest into the delinquently-established College Trust.

## CONCLUSION

¶35 For the foregoing reasons, we affirm the District Court's rulings with the exception of the court's retroactive application of $2,048/month child support beginning in February 2014. John is required to pay $1,142/month retroactive to February 2014 and through the month of August 2014. He is required to pay $2,048/month retroactive to September 2014. We remand this matter to the District Court for the issuance of a revised order in accordance with this Opinion.

/S/ PATRICIA COTTER

We Concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE